THOMAS R. BURKE (State Bar No. 141930)
    thomasburke@dwt.com
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California  94111
Telephone:  (415) 276-6500
Facsimile:  (415) 276-6599

JANET L. GRUMER (State Bar No. 232723)
    janetgrumer@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, California 90017-2566
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

Attorneys for Defendant
CABLE NEWS NETWORK, INC. (incorrectly sued as
TIME WARNER INC.)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREATER LOS ANGELES AGENCY ON DEAFNESS, INC., DANIEL JACOB, EDWARD KELLY and JENNIFER OLSON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TIME WARNER INC., a Delaware Corporation,<br><br>Defendant. | Case No. 4:11-cv-03458-LB<br><br>**DEFENDANT CABLE NEWS NETWORK, INC.'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFFS' COMPLAINT**<br><br>Date:    October 20, 2011<br>Time:    11:00 a.m.<br><br>Assigned to the Honorable Laurel Beeler<br>Courtroom 4<br><br>Action Filed:        June 15, 2011<br><br>Action Removed:    July 14, 2011 |

TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on October 20, 2011, at 11:00 a.m. or as soon thereafter as counsel may be heard before the Honorable Laurel Beeler, in Courtroom 4, Third Floor, located at 1301Clay Street, Oakland, CA 94612, Cable News Network, Inc. ("CNN"), incorrectly sued herein as Time Warner Inc. ("Time Warner") will and hereby does move this Court, pursuant to California Code of Civil Procedure ("C.C.P.") Section 425.16, for an order striking Plaintiffs' claims in the Complaint.  CNN's Special Motion to Strike is based on this Notice, the accompanying memorandum of points and authorities, and the concurrently filed declarations of Michael Toppo, Clyde D. Smith, and Thomas R. Burke and accompanying Exhibits A to J.

This Motion is made on the grounds that Plaintiffs' claims fall squarely within the scope of C.C.P. Section 425.16 and subsection (e)(4), because both claims indisputably arise from CNN's newsgathering and dissemination of news concerning matters of substantial public interest (video news reports publicly available on CNN.com).  Consequently, the burden shifts to Plaintiffs to present evidence establishing a probability that they will prevail on their claims. *See* C.C.P. § 425.16(b)(1).  Plaintiffs cannot meet this burden for a variety of independent reasons.  Specifically:

1.    Plaintiffs' claims under the California Disabled Persons Act, California Civil Code Section 54 *et seq*. (the "CDPA") and the Unruh Civil Rights Act, California Civil Code Section 51 *et seq*. (the "Unruh Act") are preempted, because Congress expressly intended to occupy and has occupied the entire field of closed captioning regulation of television programming and video over Internet protocol through the adoption of Section 713 of the Telecommunications Act governing "Video Programming Accessibility" and later with the Twenty-First Century Communications and Video Accessibility Act of 2010 that amended it.  Further, imposing California law to require closed captioning on Internet video programming would directly conflict with the federal policy favoring uniform closed captioning of online video.

2.    Plaintiffs' claims under the CDPA and the Unruh Act are barred because the Federal Communications Commission ("FCC") has exclusive jurisdiction over all closed captioning

1   matters, requiring dismissal, or at minimum a stay of this case and referral of the claims to the

2   FCC under the doctrine of primary jurisdiction.

3   3.      Plaintiffs' claims under the CDPA and the Unruh Act are barred because their application

4   as requested in the Complaint would violate CNN's rights under the First Amendment to the

5   United States Constitution and article I, section 1 of the California State Constitution.

6   4.      Plaintiffs' claims under the CDPA and the Unruh Act are barred because applying

7   California law as requested in the Complaint would impermissibly burden interstate commerce

8   in violation of the dormant Commerce Clause.

9   5.      Plaintiffs' claims under the CDPA are barred because CNN.com is not a "public place"

10  under the CDPA.

11  6.      Plaintiffs' claims under the Unruh Act are barred because CNN did not treat Plaintiffs

12  differently because of their disabilities or apply its policies in a manner that targets persons with

13  disabilities.

14  7.      Plaintiffs' claims under Section 54(c) of the CDPA and Section 51(f) of the Unruh Act are

15  barred because, as to CNN.com, CNN is not a person who owns, leases (or leases to) or operates a

16  place of public accommodation under the Americans with Disabilities Act.

17          For each of these separate and independent reasons, Plaintiffs cannot meet their burden

18  under C.C.P. § 425.16(b)(1) of demonstrating a "probability of prevailing" on their state law

19  claims and thus, the Complaint should be stricken.  Pursuant to Section 425.16(c), if the Court

20  grants this Motion, CNN is entitled to recover its attorneys' fees and costs incurred in this action

21  and will file a separate Motion.  C.C.P. § 425.16(c); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131

22  (2001).

23  DATED:  September 12, 2011                    DAVIS WRIGHT TREMAINE LLP
                                                  THOMAS R. BURKE
24

25                                                By:_____/s/Thomas R. Burke_____
                                                            Thomas R. Burke
26

27                                                Attorneys for Defendant
                                                  CABLE NEWS NETWORK, INC.
28

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................ 1

II. FACTUAL BACKGROUND .............................................................................. 4

III. SECTION 425.16 APPLIES TO PLAINTIFFS' COMPLAINT BECAUSE IT ARISES FROM CNN'S CONSTITUTIONALLY PROTECTED FREE SPEECH ACTIVITIES ....................................................................................................... 6

IV. PLAINTIFFS CANNOT DEMONSTRATE A PROBABILITY OF PREVAILING ON THEIR CLAIMS AGAINST CNN. ............................................................... 8

    A. Plaintiffs' Claims Are Preempted By Federal Law. ............................... 8

    B. The FCC's Exclusive Jurisdiction Over Closed Captioning Precludes This Court From Granting Plaintiffs' Claims. ............................................... 15

    C. Plaintiffs' Complaint Poses an Unconstitutional Prior Restraint and Regulates CNN.com's Speech in Violation of the First Amendment and California Law. ..................................................................................... 19

    D. Plaintiffs Cannot Prevail Because the Requested Relief Would Violate the Dormant Commerce Clause. ................................................................. 24

    E. Plaintiffs Cannot Prove a Probability of Prevailing on their CDPA Claim. ......... 27

    F. Plaintiffs Cannot Prove a Probability of Prevailing on their Unruh Act Claim Because They Were Not Treated Differently Because of their Disabilities. ......................................................................................... 28

    G. Plaintiffs Cannot Bring Their Claims Under Sections 51(f) and 54(c) of the Unruh Act or the CDPA. .................................................................... 31

V. CONCLUSION ................................................................................................. 33

# TABLE OF AUTHORITIES

Page

**Cases**

*ACLU v. Johnson*, 194 F.3d 1149 (10th Cir. 1999) ................................................................. 15, 27

*Alexander v. United States*, 509 U.S. 544 (1993) ........................................................................ 19

*Altria Group, Inc. v. Good*, 555 U.S. 70 (2008) ........................................................................... 9

*American Booksellers Found. v. Dean*, 342 F.3d 96 (2d Cir. 2003) ...................................... 15, 26

*American Libraries Ass'n v. Pataki*, 969 F. Supp. 160 (S.D.N.Y 1997) ................................. 14, 27

*Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003) ............................................................................. 7

*Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224 (2007) ................................... 29

*Bennett v. T-Mobile USA, Inc.*, 597 F. Supp. 2d 1050 (C.D. Cal. 2008) ........................... 9, 10, 14

*Braun v. Chronicle Publ'g*, 52 Cal. App. 4th 1036 (1997) ....................................................... 2, 7

*Briggs v. Eden Council*, 19 Cal. 4th 1106 (1999) ........................................................................ 2

*Brown v. Entertainment Merchs. Ass'n*, 131 S. Ct. 2729 (2011) ................................................ 20

*Capital Serv., Inc. v. NLRB*, 347 U.S. 501 (1954) ...................................................................... 15

*CBS v. Davis*, 510 U.S. 1315 (1994) ........................................................................................... 19

*CBS v. District Court*, 729 F.2d 1174 (9th Cir. 1983) ................................................................. 20

*Center for Democracy & Tech. v. Pappart*, 337 F. Supp. 2d 606 (E.D. Pa. 2004) ...................... 15

*Chae v. SLM Corp.*, 593 F.3d 936 (9th Cir. 2010) ........................................................................ 9

*Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992) .................................................................. 9

*Clark v. Time Warner Cable*, 523 F.3d 1110 (9th Cir. 2008) ....................................................... 18

*Crosby v. National Foreign Trade Council*, 530 U.S. 363 (2000) ............................................... 12

*Dailey v. Superior Court*, 112 Cal. 94 (1896) ........................................................................... 20

*Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468 (2000) ......................................... 7

*Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075 (9th Cir. 2006) ........................................ 18

*E&J Gallo Winery v. Encana Corp.*, 503 F.3d 1027 (9th Cir. 2007) ...................................... 10, 11

*eCash Technologies, Inc. v. Guagliardo*, 127 F. Supp. 2d 1069 (C.D. Cal. 2000) ........................ 7

ii

GREATER LOS ANGELES AGENCY ON DEAFNESS, INC. v. TIME WARNER INC.
CASE NO. 4:11-CV-03458-LB –CNN'S SPECIAL MOTION TO STRIKE

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council,*
        485 U.S. 568 (1988) ................................................................................................ 24

*Equilon Enters. v. Consumer Cause*, 29 Cal. 4th 53 (2002) ................................................. 8

*Flack v. Municipal Court*, 66 Cal. 2d 981 (1967) ............................................................... 20

*Foley v. JetBlue Airways Corp.*, 2011 WL 3359730 (N.D. Cal. Aug. 3, 2011) ...................... 9, 11

*Forsher v. Bugliosi*, 26 Cal. 3d 792 (1980) ......................................................................... 7

*Freedman v. Maryland*, 380 U.S. 57 (1965) ...................................................................... 20

*Freeman v. Burlington Broadcasters, Inc.*, 204 F.3d 311 (2d Cir. 2000) ............................ 10

*Gates v. Discovery Commc'ns*, 34 Cal. 4th 679 (2004) ........................................................ 7

*Gravquick A/S v. Trimble Navigation Int'l, Ltd.*, 323 F.3d 1219 (9th Cir. 2003) ................ 25

*Harris v. Capital Growth* Investors, 52 Cal. 3d 1142 (1991) ........................... 28, 29, 30, 31

*Hart v. Cult-Awareness Network*, 13 Cal. App. 4th, 777 (1993) ....................................... 21

*Healy v. Beer Institute*, 491 U.S. 324 (1989) ...................................................... 24, 25, 26

*Hilton v. Hallmark Cards*, 599 F.3d 894 (9th Cir. 2010) ..................................................... 6

*In re Marriage of Candiotti*, 34 Cal. App. 4th 718 (1995) ............................................... 19

*Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050 (2005) ................... 20, 21

*Johnson v. Hairston*, 2007 WL 748479 (M.D Ala. Mar. 8, 2007) ..................................... 17

*Jones v. United States*, 529 U.S. 848 (2000) ...................................................................... 24

*Ketchum v. Moses*, 24 Cal. 4th 1122 (2001) ....................................................................... 3

*Koebke v. Bernardo Height Country Club*, 36 Cal. 4th 824 (2005) ................................... 29

*Lieberman v. KCOP Television*, 110 Cal. App. 4th 156 (2003) ............................................ 7

*Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011 (9th Cir.
        2009) ...................................................................................................................... 21

*Long v. Valentino*, 216 Cal. App. 3d 1287 (1989) ............................................................. 20

*Lyon v. Gila River Indian Cmty.*, 626 F.3d 1059 (9th Cir. 2010) ..................................... 18

*Macias v. Hartwell*, 55 Cal. App. 4th 669 (1997) ............................................................... 8

*Madden v. Del Taco, Inc.,* 150 Cal. App. 4th 294 (2007) ................................................. 28

*Metabolife, Inc. v. Wornick*, 264 F.3d 839 (9th Cir. 2001) ................................................ 7

iii

*Mindys Cosmetics v. Dakar*, 611 F.3d 590 (9th Cir. 2010) ............................................... 8

*Munson v. Del Taco, Inc.*, 46 Cal. 4th 661 (2009) ........................................................... 31

*National Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946 (N.D. Cal. 2006) ............. 27, 31

*National Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521 (9th Cir. 2009) ................................................................................................ 24

*Navellier v. Sletten*, 29 Cal. 4th 82 (2002) .................................................................... 6

*Navellier v. Sletten*, 106 Cal. App. 4th 763 (2003) .......................................................... 8

*NCAA v. Miller*, 10 F.3d 633 (9th Cir. 1993) ........................................................... 26, 27

*NCAA v. Miller*, 795 F. Supp. 1476 (D. Nev. 1992) ......................................................... 27

*Near v. Minnesota*, 283 U.S. 697 (1931) ...................................................................... 19

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976) ................................................. 19, 20

*New York Times Co. v. United States*, 403 U.S. 713 (1971) .............................................. 19

*Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986) ........................................... 7

*PSINet, Inc. v. Chapman*, 362 F.3d 227 (4th Cir. 2004) .................................................. 15

*Public Util. Dist. No. 1 of Snohomish County v. Dynegy Power*, 384 F.3d 756 (9th Cir. 2004) ....................................................................................................... 10

*Public Util. Dist. No. 1 v. IDACORP Inc.*, 379 F.3d 641 (9th Cir. 2004) .............................. 10

*Qwest Corp. v. Arizona Corp. Comm'n*, 567 F.3d 1109 (9th Cir. 2009) ................................. 11

*Silvas v. E\*Trade Mortgage Corp.*, 514 F.3d 1001 (9th Cir. 2008) ................................. 9, 10

*SMSA Ltd. P'ship v. Town of Clarkstown*, 603 F. Supp. 2d 715 (S.D.N.Y. 2009) ....................... 10

*Sorrell v. IMS Health, Inc.*, 131 S. Ct. 2653 (2011) ....................................................... 21

*Taus v. Loftus*, 40 Cal. 4th 684 (2007) ........................................................................ 8

*Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003) ...................................................... 9, 12, 13

*Torres v. AT&T Broadband, LLC*, 158 F. Supp. 2d 1035 (N.D. Cal. 2001) .............................. 30

*Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622 (1994) ..................................................... 22

*Turner v. American Med. Colls.*, 167 Cal. App. 4th 1401 (2008) ................................ 27, 28, 29

*United States ex. rel Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999) ...................................................................................................... 7

*United States v. General Dynamics Corp.*, 828 F.2d 1356 (9th Cir. 1987) .............................. 18

iv

*United States v. Michigan Nat'l Corp.*, 419 U.S. 1 (1974) ............................................ 15

*United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803 (2000) ............................... 21

*United v. RCA*, 358 U.S. 334 (1959) ............................................................................. 18

*Urahausen v. Longs Drug Stores Cal., Inc*., 155 Cal. App. 4th 254 (2007) ............... 27, 28

*Verizon New England, Inc. v. Maine Pub. Utils. Comm'n,* 509 F.3d 1 (1st Cir.
    2007) .......................................................................................................................... 11

*Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104 (9th Cir. 2000) .................. 31

*Whistler Invs., Inc. v. Depository Trust & Clearing Corp.*, 539 F.3d 1159 (9th Cir.
    2008) ...................................................................................................................... 9, 12

*Yakima Valley Mem. Hosp. v. Washington State Dep't of Health*, 2011 WL
    3629895 (9th Cir. Aug. 19, 2011) ............................................................................. 25

*Young v. Facebook, Inc.*, 2011 WL 1878001 (N.D. Cal. May 17, 2011) .............. 29, 30, 32

*Zulauf v. Kentucky Educ. Television*, 28 F. Supp. 2d 1022 (E.D. Ky. 1998) .......... 10, 12, 16, 17

**Statutes**

29 U.S.C. § 794 .............................................................................................................. 17

42 U.S.C. § 12103(1)(A)-(B) ........................................................................................ 16

42 U.S.C. § 12182(a) ..................................................................................................... 31

42 U.S.C. § 12201(b) ..................................................................................................... 11

47 U.S.C. § 613 ......................................................................................................... *passim*

C.C.P. § 425.16 ........................................................................................................ *passim*

C.C.P. § 425.16 (e)(4) ............................................................................................... 1, 6, 7

C.C.P. § 425.16(a)(1) ....................................................................................................... 2

C.C.P. § 425.16(b)(1) ............................................................................................... *passim*

C.C.P. § 425.16(c) ............................................................................................................ 3

C.C.P. § 51(f) ............................................................................................................... 2, 3

C.C.P. § 54(c) .............................................................................................................. 2, 3

California Civil Code § 51 ........................................................................................ *passim*

California Civil Code § 54 ........................................................................................ *passim*

California Civil Code § 54(a) ......................................................................................... 27

CVAA § 201(e)(1) .................................................................................................. 11

CVAA § 202(b)................................................................................................. 13, 16

Pub. L. No. 111-260, 124 Stat. 2751 ...................................................................... 5

Pub. L. No. 111-265, 124 Stat. 2795 ...................................................................... 5

**Regulations**

28 C.F.R. § 36.303(b)(1)-(2)................................................................................. 16

47 C.F.R. § 79.1(h) ............................................................................................... 16

**Constitutional Provisions**

Cal. Const. art. I, § 2 .............................................................................................. 7

S. Rep. No. 111-386........................................................................................ 12, 13

U.S. Constitution, Art. VI, cl. 2 .............................................................................. 9

**Other**

*Closed Captioning and Video Description of Video Programming,*
    Report and Order, 13 FCC Rcd. 3272.......................................................... 17

Video Programming Accessibility and Advisory Committee Report, July 13, 2011 ..... 5, 11, 13, 16

GREATER LOS ANGELES AGENCY ON DEAFNESS, INC. v. TIME WARNER INC.
CASE NO. 4:11-CV-03458-LB –CNN'S SPECIAL MOTION TO STRIKE

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

By this putative class action lawsuit, Plaintiffs seek an order from this Court compelling Cable News Network, Inc. ("CNN") (incorrectly sued as Time Warner Inc.) – and CNN *alone* – to immediately provide real-time closed captions on all news videos posted on www.CNN.com, under the California Disabled Persons Act, Cal. Civil Code Section 54 *et seq.* (the "CDPA"), and Unruh Civil Rights Act, Cal. Civil Code Section 51 *et seq.* (the "Unruh Act").  Not only is this technologically not possible now, this demand occurs just as the Federal Communications Commission ("FCC") is poised to announce a federal online closed captioning regulations that the industry is preparing to implement.  This would provide the very relief Plaintiffs seek in a uniform manner that does not disrupt CNN or unfairly burden its rights.  CNN recognizes the importance of closed captioning and has, for years, actively contributed to the development of universal captioning standards, including captioning online.  Indeed, CNN was working with the FCC toward recommending standards for Internet captioning well before Plaintiffs first contacted CNN.

The FCC's regulations, which are expected to establish a single publication standard for all Internet videos previously aired on television, are due to issue in just a few months – by January 13, 2012.  Both equipment manufacturers and online publishers have been and must be part of this process.  And CNN technical support personnel are prepared to implement online captioning technology for CNN.com as promptly as possible after the regulations issue.

Plaintiffs' demand that CNN provide online closed captioning for all news videos hosted on CNN.com ignores the reality of the current marketplace.  In the absence of mandatory single standards for closed captioning, consumers now access video online using a variety of different video players, web browsers and platforms.  Forcing CNN to implement an unworkable stop-gap solution now, cannot, as a practical matter, be implemented before the FCC announces federal regulations, and will slow news postings to CNN.com.  Moreover, exclusively requiring CNN.com to implement imprecise current online captioning technology also will impermissibly burden CNN's constitutionally protected speech – but none of its news competitors – by diverting vital

1

**DAVIS WRIGHT TREMAINE** LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CA  94111-3611
(415) 276-6500
Fax: (415) 276-6599

company resources away from news reporting and compliance with the forthcoming national standard.

Plaintiffs' Complaint that targets only CNN's newsgathering and publishing activities in the dissemination of time-sensitive news and information through CNN.com to its global audience indisputably raises claims arising out of CNN's First Amendment--protected free speech activities involving matters of substantial public interest.  Plaintiffs' claims are, therefore, subject to dismissal under California's statute targeting "Strategic Lawsuits Against Public Participation," *i.e.*, its anti-SLAPP law, C.C.P. § 425.16, which was expressly designed by the California Legislature "to nip SLAPP litigation in the bud[ ]" by quickly disposing of claims that target the exercise of free-speech rights.  *Braun v. Chronicle Publ'g*, 52 Cal. App. 4th 1036, 1042 (1997).  Under the statute, any "cause of action against a person arising from any act … in furtherance of the person's right of … free speech … in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  C.C.P. § 425.16(b)(1).  Section 425.16 "shall be construed broadly."  C.C.P. § 425.16(a)(1); *Briggs v. Eden Council*, 19 Cal. 4th 1106, 1120-21 (1999).

Under the anti-SLAPP statute, Plaintiffs must prove – with admissible evidence – that they have a probability of success on the merits of their lawsuit.  C.C.P. § 425.16 (b)(1).  Yet, Plaintiffs' Complaint is legally barred by seven different legal defenses.  Each of these individually, and collectively, require this Court to grant CNN's Special Motion to Strike and dismiss Plaintiffs' Complaint with prejudice.

*First*, Plaintiffs' claims are preempted by the Federal Communications Act, because Congress expressly intended to "occupy the field" of closed captioning through adoption of Section 713 of the 1996 Telecommunications Act governing "Video Programming Accessibility" and its later amendment by the Twenty-First Century Communications and Video Accessibility Act of 2010.  Imposing California law on CNN, by interpreting the Unruh Act and the CDPA to require closed captioning on news videos hosted on CNN.com would also directly conflict with the federal policy favoring uniform closed captioning standards.  *See infra* § IV.A.

2

DAVIS WRIGHT TREMAINE LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CA  94111-3611
(415) 276-6500
Fax: (415) 276-6599

*Second*, Plaintiffs' claims are barred because the FCC has exclusive jurisdiction over closed captioning matters pertaining to video programming accessibility, or in the alternative, are barred because the Court should dismiss Plaintiffs' Complaint and refer the claims to the FCC under the doctrine of primary jurisdiction.  *See infra* § IV.B.

*Third*, Plaintiffs' claims are barred because application of the CDPA and the Unruh Act as Plaintiffs request would violate CNN's rights under the First Amendment to the United States Constitution and article I, section 1 of the California State Constitution.  *See infra* § IV.C.

*Fourth*, Plaintiffs' claims are barred because applying California law as set forth in the Complaint would impermissibly burden interstate commerce in violation of the dormant Commerce Clause.  *See infra* § IV.D.

*Fifth*, Plaintiffs' claims under the CDPA are barred because CNN.com is not a "public place" under the CDPA.  *See infra* § IV.E.

*Sixth*, Plaintiffs' Unruh Act claims are barred because CNN did not treat Plaintiffs differently because of their disabilities or apply its policies in a manner that targets persons with disabilities.  *See infra* § IV.F.

*Seventh* and finally, Plaintiffs' claims under Section 54(c) of the CDPA and Section 51(f) of the Unruh Act are barred because, as to CNN.com, CNN is not a person that owns, leases (or leases to) or operates a place of public accommodation under the Americans with Disabilities Act ("ADA").  *See infra* § IV.G.

Furthermore, CNN has been actively participating with the FCC in efforts to design and implement federal captioning standards, and the FCC is expected to announce universal standards soon.  The relief the Complaint seeks cannot be accorded Plaintiffs as they demand, but rather would result in less expeditious, less effective, and less inclusive captioning of news videos at CNN.com.  Plaintiffs' lawsuit unlawfully seeks to interfere with the FCC's efforts and should be dismissed for all these reasons.

3

DAVIS WRIGHT TREMAINE LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CA  94111-3611
(415) 276-6500
Fax: (415) 276-6599

## II.   FACTUAL BACKGROUND

On December 14, 2010, Plaintiffs wrote CNN inquiring about closed captioning on news videos hosted on CNN.com.[1]  After trading correspondence on December 28, 2010 and February 23, 2011, *see* Burke Decl. ¶¶ 3-4, Exhs. C&D, counsel for CNN responded in a letter dated February 28, 2011 confirming CNN's commitment to making CNN.com accessible to everyone, but noting the absence of federal standards for the closed captioning of Internet-delivered video content.  Burke Decl. ¶ 5, Exh. E.  Plaintiffs made no further contact with CNN until, three months later, Plaintiffs filed this action.  *See* Burke Decl. ¶ 6, Exh. F (letter notifying CNN counsel of this lawsuit).

The overarching mission of CNN and CNN.com, which share news-reporting and content-production resources, is to provide the most compelling content and pertinent news and information to a global audience, and, in particular, to report and offer commentary on domestic and international matters of public concern.  CNN's television programming is transmitted with closed captioning consistent with, and based on technical standards established by, rules adopted and enforced by the FCC.  In contrast to closed captioning on television, there are currently no universally adopted industry standards for online closed captioning in the United States.  Nor are there FCC rules on the format of closed captioning for the Internet and for broadband devices that software developers or manufacturers can follow.  Thus, unlike the universal standards that are now built into the manufacturing of television receivers, no universal standard for online closed captioning exists for the multitude of devices that carry online video.

In the absence of mandatory compliance with a single standard, a number of proprietary techniques and proposed standards have been developed, but the majority of websites have not licensed these non-uniform, proprietary systems.  This is in part because online video producers and their distribution systems and partner systems must accommodate a wide variety of video

---

[1]  Declaration of Thomas R. Burke ("Burke Declaration") ¶ 2, Exh. B.  The letter was directed to the Executive Vice President and General Counsel of Time Warner, the ultimate corporate parent of CNN.

GREATER LOS ANGELES AGENCY ON DEAFNESS, INC. v. TIME WARNER INC.
CASE NO. 4:11-CV-03458-LB – CNN'S SPECIAL MOTION TO STRIKE

DAVIS WRIGHT TREMAINE LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CA  94111-3611
(415) 276-6500
Fax: (415) 276-6599

formats (.mgp, .mov, .wmv, .rm, and others), video players (QuickTime, Flash, Windows Media Player, and others), web browsers (Explorer, Firefox, Safari, Chrome, and others), and different platforms (Windows, Apple, Linux).  If they do not, they will exclude various segments of the public (depending on which formats, players, and/or platforms they may use) from accessing the captioning.  These proprietary captioning methods also present a variety of serious content and quality concerns.  Words and sometimes entire sentences of content can be inadvertently omitted, so as to entirely change the meaning of the content, which is, of course, of critical concern in the context of news reporting.  Closed captioning on mobile and portable devices poses further difficulties because certain mobile phones support proprietary applications for media viewing, others allow web access and/or apps, and still others do not support some video formats.

The industry has known since 2009 that closed captioning for online videos, which would likely include government-set standards that apply across the industry, were being contemplated.  Given the significant expense of proprietary captioning solutions and their technical limitations, CNN has been actively participating in development of government standards before investing in technologies to closed-caption Internet protocol video ("IP Video").  This move toward standardization was solidified with passage of the Twenty-First Century Communications and Video Accessibility Act, Pub. L. No. 111-260, 124 Stat. 2751, as amended by Pub. L. No. 111-265, 124 Stat. 2795 (Oct. 8, 2010) ("CVAA") (attached as Exh. G to the Burke Declaration).  The adoption of a single publication format for online closed captioning by the FCC under the CVAA will permit software and devices rendering covered content to ensure the accurate, timely and interoperable exchange and display of captioning information in an orderly manner.  On a separate track, in December of 2010, an open-process, accredited international standards body, the Society of Motion Picture and Television Engineers ("SMPTE"), passed a standard specifically developed for and capable of full and faithful reproduction of current broadcast/telecast captions in the Internet/broadband space, called SMPTE-2052.

On July 13, 2011, the Video Programming Accessibility and Advisory Committee that the FCC appointed under the CVAA (the "VPAAC"), submitted to the agency its First Report under

DAVIS WRIGHT TREMAINE LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CA  94111-3611
(415) 276-6500
Fax: (415) 276-6599

the CVAA on Closed Captioning of Video Programming Delivered Using Internet Protocol ("VPAAC Report"). In that Report (attached as Exh. I to the Burke Declaration), the VPAAC recommended adoption of SMPTE-2052 as the standard caption-data encoding format for delivery of captions to consumer video players. The FCC, however, has not yet decided whether it will impose this standard on videos subject to the CVAA's online closed captioning mandates. The FCC must adopt and announce regulations implementing the CVAA and the schedule under which the industry must come into compliance with them. The FCC is statutorily required to complete this rulemaking process in just a few months – by January 13, 2012.

### III.  SECTION 425.16 APPLIES TO PLAINTIFFS' COMPLAINT BECAUSE IT ARISES FROM CNN'S CONSTITUTIONALLY PROTECTED FREE SPEECH ACTIVITIES.

The California Anti-SLAPP statute broadly protects First Amendment speech activities, including CNN's expressive activities that Plaintiffs' claims target, which are expressly protected by C.C.P. § 425.16 (e)(4). A two-step process is followed to determine whether a cause of action must be stricken under Section 425.16. *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002). "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." *Id*. To make this showing, the defendant must demonstrate that the plaintiffs' claim arises from actions by the defendant that "fit[ ] one of the categories spelled out in section 425.16, subdivision (e)." *Id*. Under subdivision (e)(4), the statute protects "any … conduct [by the defendant] in furtherance of the exercise of the constitutional right … of free speech in connection with … an issue of public interest." Second, if the defendant makes this threshold showing, the burden shifts to the plaintiff to establish, with admissible evidence, "a probability that [he] will prevail on the claim[s]." C.C.P. § 425.16(b)(1). If the plaintiff cannot meet that burden, its claims must be dismissed with prejudice. *Id*.

Both the Ninth Circuit Court of Appeals and this Court have recognized that a defendant may file an anti-SLAPP motion to strike state law claims filed in federal court. *Hilton v. Hallmark Cards*, 599 F.3d 894, 900 n.2 (9th Cir. 2010); *Batzel v. Smith*, 333 F.3d 1018, 1025-26 (9th Cir.

---

GREATER LOS ANGELES AGENCY ON DEAFNESS, INC. v. TIME WARNER INC.
CASE NO. 4:11-CV-03458-LB – CNN'S SPECIAL MOTION TO STRIKE

DAVIS WRIGHT TREMAINE LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CA  94111-3611
(415) 276-6500
Fax: (415) 276-6599

2003).[2]  CNN's publishing of news videos on CNN.com comfortably falls within the scope of the anti-SLAPP statute under Section 425.16(e)(4), which encompasses any statement made "in connection with … an issue of public interest," which language courts have interpreted broadly. *See Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 481 (2000) ("The definition of 'public interest' within the meaning of [Section 425.16] has been broadly construed to include not only governmental matters, but also private conduct that impacts a broad segment of society.").

Given this broad construction, Plaintiffs' claims indisputably arise from CNN's publishing of online news videos that feature its reporting on important news events happening around the world that involve matters of substantial public interest.  *See, e.g., Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775-76 (1986) (equating newspaper publishing with "free speech"); *Gates v. Discovery Commc'ns*, 34 Cal. 4th 679, 686 (2004) (applying constitutional protection enjoyed by "firsthand coverage of [ ] events," documentaries and reenactments, in holding that "guarantees of freedom of expression apply" to news reports as well as entertainment) (internal quotation marks and citations omitted); *Forsher v. Bugliosi*, 26 Cal. 3d 792, 809 (1980) (acknowledging the "significant public interest" in news reports about crimes); *Braun*, 52 Cal. App. 4th at 1046 ("news reporting activity *is* free speech"); Cal. Const. art. I, § 2 ("Every person may freely speak, write and publish his or her sentiments on all subjects.").  Courts consistently have recognized that news reporting and publishing activities involve the exercise of free speech or acts in furtherance of free speech, and as such are protected under the anti-SLAPP statute.  *See, e.g., Lieberman v. KCOP Television*, 110 Cal. App. 4th 156, 166 (2003) ("conduct" within the meaning of the anti-SLAPP statute "is not limited to the exercise of [the] right of free speech, but to all conduct in furtherance of the exercise of the right of free speech.").

---

[2]  The anti-SLAPP statute applies to state claims filed in federal diversity cases because it confers substantive rights and does not "directly collide" with the Federal Rules of Civil Procedure.  *See, e.g., United States ex. rel Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 970-73 (9th Cir. 1999); *see also Metabolife, Inc. v. Wornick*, 264 F.3d 839, 839-40 (9th Cir. 2001); *eCash Technologies, Inc. v. Guagliardo*, 127 F. Supp. 2d 1069, 1074-75 (C.D. Cal. 2000).

GREATER LOS ANGELES AGENCY ON DEAFNESS, INC. v. TIME WARNER INC.
CASE NO. 4:11-CV-03458-LB – CNN'S SPECIAL MOTION TO STRIKE

DAVIS WRIGHT TREMAINE LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CA 94111-3611
(415) 276-6500
Fax: (415) 276-6599

Under these circumstances, CNN has satisfied its burden of demonstrating that Plaintiffs' state law claims are subject to a Special Motion to Strike. Plaintiffs cannot, however, for the many reasons explained below, satisfy their burden of establishing a probability of prevailing on the claims set forth in their Complaint.

## IV.  PLAINTIFFS CANNOT DEMONSTRATE A PROBABILITY OF PREVAILING ON THEIR CLAIMS AGAINST CNN.

Because CNN's news reporting and dissemination activities comfortably fall within the scope of Section 425.16, the burden shifts to Plaintiffs to present admissible evidence that they have a probability of succeeding on the merits of their lawsuit. C.C.P. § 425.16 (b)(1); *Macias v. Hartwell*, 55 Cal. App. 4th 669, 675 (1997). To satisfy their burden under the SLAPP statute, it is not sufficient that Plaintiffs' claims survive a demurrer, nor can they rely on bare allegations in their pleading; instead, in opposition, they must provide "competent, *admissible* evidence" to "establish evidentiary support for [their] claim." *Mindys Cosmetics v. Dakar*, 611 F.3d 590, 599 (9th Cir. 2010) (emphasis added; citations omitted); *Navellier v. Sletten*, 106 Cal. App. 4th 763, 775-76 (2003); *Equilon Enters. v. Consumer Cause*, 29 Cal. 4th 53, 67 (2002) (recognizing plaintiff must provide the court with sufficient evidence, not theories in the complaint, to permit the court to determine whether he can prevail).

In reviewing a special motion to strike, the court applies a summary judgment-like standard. *Taus v. Loftus*, 40 Cal. 4th 684, 714 (2007). A plaintiff's claims must be "supported by a sufficient *prima facie* showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Id*. at 713-14 (citation omitted). If the plaintiff fails to satisfy this evidentiary burden, the court *must* strike the complaint. C.C.P. § 425.16(b)(1). Plaintiffs cannot meet this burden, and, therefore, their Complaint must be dismissed with prejudice as a matter of law.

### A.  Plaintiffs' Claims Are Preempted By Federal Law.

Plaintiffs' Complaint must be dismissed because under the Supremacy Clause of the federal Constitution their claims are preempted by the "Video Programming Accessibility" provisions of Section 713 of the Federal Communications Act, codified at 47 U.S.C. § 613, as amended by the

8

DAVIS WRIGHT TREMAINE LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CA  94111-3611
(415) 276-6500
Fax: (415) 276-6599

CVAA.  As a consequence, Plaintiffs cannot, as a matter of law, show they have a probability of succeeding on the merits of their Unruh Act and CDPA claims.

Under the Supremacy Clause, federal law represents the "supreme Law of the Land."  U.S. Constitution, Art. VI, cl. 2.  Consequently, "state laws that conflict with federal law are 'without effect.'"  *Chae v. SLM Corp*., 593 F.3d 936, 941 (9th Cir. 2010) (quoting *Altria Group, Inc. v. Good*, 555 U.S. 70, 75 (2008)).  Applying this constitutional directive, federal law can "preempt and displace state law" through express preemption, field preemption, and conflict preemption. *Ting v. AT&T*, 319 F.3d 1126, 1135 (9th Cir. 2003).  In determining whether such state laws are preempted, the Ninth Circuit requires consideration of the following principles:

1. "When considering preemption, no matter which type, the purpose of Congress is the ultimate touchstone."

2. Absent express language, courts "look to the goals and policies of the Act in determining whether it in fact pre-empts an action."

3. The "ultimate task in any pre-emption case is to determine whether state regulation is consistent with the structure and purpose of the statute as a whole."

4. There is a presumption against preemption, except that, "when the State regulates in an area where there has been a history of significant federal presence, the presumption usually does not apply."

*Id*. at 1136 (internal quotation marks and citations omitted).  Here, Plaintiffs' Unruh Act and CDPA claims are preempted under both "field" and "conflict" preemption.

Field preemption occurs "when Congress 'so thoroughly occupies a legislative field,' that it effectively leaves no room for states to regulate conduct in that field."  *Whistler Invs., Inc. v. Depository Trust & Clearing Corp.*, 539 F.3d 1159, 1164 (9th Cir. 2008) (citing *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992)).  *See also Silvas v. E\*Trade Mortgage Corp.*, 514 F.3d 1001, 1004 (9th Cir. 2008) ("mere volume and complexity of federal regulations demonstrate … an implicit congressional intent to displace all state law"); *Ting*, 319 F.3d at 1136 (same)*; Foley v. JetBlue Airways Corp.*, 2011 WL 3359730, at \*12-13 (N.D. Cal. Aug. 3, 2011).  *Cf., Bennett v. T-Mobile USA, Inc.*, 597 F. Supp. 2d 1050, 1052 (C.D. Cal. 2008) ("Given the strong federal presence of regulation in this industry, a presumption against preemption is unwarranted.").  Where

field preemption applies, the court must dismiss any and all state claims encompassed by the field. *See, e.g.*, *Silvas*, 514 F.3d at 1008; *E&J Gallo Winery v. Encana Corp.*, 503 F.3d 1027, 1041 (9th Cir. 2007); *Public Util. Dist. No. 1 v. IDACORP Inc.*, 379 F.3d 641, 649 (9th Cir. 2004)**.**

It is plain that, in passing the Telecommunications Act of 1996, which significantly updated the Federal Communications Act by, among other things, adding Section 713, Congress intended, as to that section and its later CVAA amendments, to "occupy the entire field" of closed captioning. Perhaps most prominently for present purposes, the soon-forthcoming FCC rules that will govern closed captioning of online video are required under the CVAA amendments to Section 713, *see* 47 U.S.C. § 613(c)(2), and Section 713 expressly bars private rights of action and gives exclusive jurisdiction to the FCC – including over IP video. *Id.* § 613(j) (prohibiting private rights of action as to matters governed by "this section" 713). This provision disallows Plaintiffs' claims, a consequence that cannot be avoided by pleading under California's disabilities laws rather than FCC rules. *See Zulauf v. Kentucky Educ. Television*, 28 F. Supp. 2d 1022, 1023 (E.D. Ky. 1998), discussed in greater detail *infra* at 16-17. Section 713's bar to private causes of action is compelling evidence of Congress' intent to preempt the field, as courts have recognized that such grants of exclusive jurisdiction, coupled with a long history of federal regulation, warrant preemption.[3]

This preemptive effect is especially clear as to the instant suit, given that the CVAA specifically directed the VPAAC, a special FCC committee, to identify uniform standards for online closed captioning by recommending "protocols, technical capabilities, and technical procedures," as well as any "technical standards," necessary to permit industry players to deliver

---

[3]  *E.g., Freeman v. Burlington Broadcasters, Inc.*, 204 F.3d 311, 320-21 (2d Cir. 2000) (federal Communications Act "make[s] clear that Congress intended the FCC to [have] exclusive authority over technical matters related to radio broadcasting," and legislative history was consistent with "inference of preemption from Congress's comprehensive legislation in the field and [its] explicit delegation of authority"); *SMSA Ltd. P'ship v. Town of Clarkstown*, 603 F. Supp. 2d 715, 722-23 (S.D.N.Y. 2009); *Public Util. Dist. No. 1 of Snohomish County v. Dynegy Power*, 384 F.3d 756, 761 (9th Cir. 2004). *Cf., Bennett v. T-Mobile USA, Inc.*, 597 F. Supp. 2d 1050, 1052 (C.D. Cal. 2008) ("Given the strong federal presence of regulation in this industry, a presumption against preemption is unwarranted").

10

DAVIS WRIGHT TREMAINE LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CA  94111-3611
(415) 276-6500
Fax: (415) 276-6599

online closed captioning.[4]  In carrying out this charge, the VPAAC appreciated the need for uni-
form standards to avoid unnecessary costs and delays.  *See* VPAAC Report (attached as Exhibit I),
at 27 ("[I]t is highly desirable that there be a single standard interchange format for content
providers to encode closed captions into programming before they distribute it ….  With this single
standard, content providers can caption video for the Internet one time.  Otherwise, they might have
to recaption Internet video, incurring additional cost and delay.").  *See also* Declaration of Clyde D.
Smith ("Smith Declaration") ¶ 20.  *Compare*, *e.g.*, *JetBlue*, 2011 WL 3359730, at *13-15 (dismis-
sing as field-preempted Unruh and CDPA claims based on alleged inaccessibility of airline website
and check-in kiosks, which were "pervasively regulated" by "detailed, comprehensive, national
regulation, based on Federal statute" as "part of a broad, complex regulatory scheme" that included
"rules [that] provide specific steps to be taken" as to airline websites and kiosks).

It is further notable that, unlike the ADA, which allows states to adopt remedies, rights,
and procedures offering greater protection for those with disabilities than the ADA affords, *see*
42 U.S.C. § 12201(b), neither Section 713, nor any other relevant provision of the Federal Com-
munications Act, provides such a "savings clause."  While the presence of a savings clause that
preserves states' rights tends to preclude federal preemption, the converse also is true – the
absence of such a savings clause, as is the case with Section 713, underscores the intended
federal supremacy and the absence of state power to establish closed captioning requirements.[5]

---

[4]  *See generally* CVAA § 201(e)(1) (47 U.S.C. note).  Even before enactment of the CVAA, the
FCC recognized the need for the federal government to establish and pursue uniform standards for
making video programming accessible to Americans with disabilities. *See* Connecting America:
The National Broadband Plan (attached as Exhibit J to Burke Declaration), at 181 ("In order to
achieve this goal [to allow Americans with disabilities to experience the benefits of broadband], the
federal government must become a model for accessibility."); *id.* at 182 ("The federal government
should ensure the accessibility of digital content.").

[5]  *See, e.g.*, *Qwest Corp. v. Arizona Corp. Comm'n*, 567 F.3d 1109, 1118 (9th Cir. 2009) (preempt-
ing state law because, "[p]erhaps most tellingly, [the relevant Telecom Act provision] contains no
[ ] state commission authority savings clause") (quoting *Verizon New England, Inc. v. Maine Pub.
Utils. Comm'n,* 509 F.3d 1, 7 (1st Cir. 2007) (absence of clause reserving state power, "under-
score[es] intended federal supremacy and the absence of state power")); *E&J Gallo*, 503 F.3d
at 1041.

---

GREATER LOS ANGELES AGENCY ON DEAFNESS, INC. v. TIME WARNER INC.
CASE NO. 4:11-CV-03458-LB – CNN'S SPECIAL MOTION TO STRIKE

DAVIS WRIGHT TREMAINE LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CA  94111-3611
(415) 276-6500
Fax: (415) 276-6599

Plaintiffs' Complaint also must be dismissed under the doctrine of conflict preemption because, if this Court orders closed captioning on all news videos published on CNN.com, such application of California law would directly conflict with the federal policy of uniform closed captioning standards.  Conflict preemption occurs when "federal law actually conflicts with any state law."  This requires examination of the federal statute "as a whole to determine whether a party's compliance with both federal and state requirements is [1] impossible or [2] whether, in light of the federal statute's purpose and intended effects, state law poses an obstacle to the accomplishment of Congress's objectives."  *Whistler*, 539 F.3d at 1164 (citing *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 373 (2000)).  *See also Ting*, 319 F.3d at 1136.

Here, the purpose of Section 713, as recognized by a federal court specifically interpreting federal closed captioning law and rules, is to "promote uniformity in the area of closed captioning." *Zulauf*, 28 F. Supp. 2d at 1023 (court was "merely honoring Congress's intent to allow the FCC to address any [closed captioning] complaints under the statute.").  Later, the CVAA was created to promote uniformity specifically in the area of closed captioning on the Internet.  *See* S. Rep. No. 111-386, at 1 (2010) (attached as Exhibit H to the Burke Declaration) ("The purpose of [the CVAA] is to update the communications laws to help ensure that individuals with disabilities are able to … better access video programming.").  In doing so, the CVAA specifically directs the FCC and its advisory committees to determine the appropriate technical standards and implementation schedule for the provision of online closed captioning.  Congress could hardly be more explicit in articulating how it intended to effectuate its objective of uniform closed captioning standards.

Compliance with both an interpretation of California's Unruh Act and the CDPA that requires immediate captioning under an as-yet undefined technical standard, and with federal law embodied by the CVAA, is impossible.  There currently exists no technical capacity for CNN to create a California-only solution.  Rather, CNN.com enjoys a national and international audience.  Nothing in its operations specifically targets only a California audience.  Even if it were technically possible to create captioned news videos available only to hearing-impaired Californians, it is neither economically nor practically feasible to have differing standards for video captioning in

DAVIS WRIGHT TREMAINE LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CA  94111-3611
(415) 276-6500
Fax: (415) 276-6599

different states – or for only one state.  Declaration of Michael Toppo ("Toppo Declaration") ¶¶ 8-11, 16.

The present lack of industry consensus for closed-captioning online video also makes it impossible for CNN to provide the relief that Plaintiffs seek here.  The divergent proprietary standards, varying software and equipment, and other non-standardized technical impediments currently preclude the levels of captioning accuracy required for CNN's constitutionally-protected news activities.  As described in greater detail in the Smith Declaration, forcing CNN.com to use the present error-prone mechanisms would be improper.  Smith Decl. ¶¶ 15-17, 23.  Rather, the correct manner of proceeding is the one already underway, *i.e.*, development of federal regulations that can be relied upon industry-wide to ensure accurate and widely available captions.  CNN cannot accomplish this on its own – or be forced to – but rather, as with closed captioning for tele-vision, uniform rules are needed not only for content-providers, but also software and hardware manufacturers.  *Cf.*, *id*. ¶¶ 14, 16-19.  Plaintiffs' needs cannot be met by jumping the gun on the FCC regulatory process, and forcing CNN.com to do so would impermissibly conflict with the federal CVAA/FCC regulatory regime.

When the FCC establishes a schedule for compliance with captioning requirements for online video, and if, as expected, it requires such obligations in phases, *see* VPAAC Report § VII, there would also be a direct conflict between application of California law for Plaintiffs to require CNN to implement immediate captioning, while the FCC imposes a phased process.  This would further place CNN in an impossible position of having to comply with conflicting state and federal requirements.  *See, e.g.*, CVAA § 202(b) (Exhibit G) (requiring regulations to adopt an "appropriate schedule of deadlines for the provision of closed captioning"); S. Rep. No. 111-386, at 14 (attached as Exhibit H to the Burke Declaration) ("The Committee elected to apply the captioning require-ment only prospectively ….").

Under the "obstruction" strand of conflict preemption, such "an aberrant or hostile state rule is preempted to the extent it actually interferes with the methods by which the federal statute was designed to reach [its] goal." *Ting*, 319 F.3d at 1137 (internal quotation marks omitted).  Courts

1   "consider the relationship between state and federal laws as they are interpreted and applied, not

2   merely as they are written," focusing on "both the objective of the federal law and the method

3   chosen by Congress to effectuate that objective, taking into account the law's text, application,

4   history, and interpretation." *Id*.  In *Bennett,* the court found the plaintiff's state common law claims

5   regarding injury due to radio emissions were conflict preempted as it was Congress' intent to create

6   national uniformity in wireless telecommunications.  597 F. Supp. 2d at 1053.  It specifically

7   acknowledged that, just as here, Congress delegated authority to the FCC "to create uniform rules

8   for telecommunications, which, by its very nature, requires consistency amongst the states," and

9   that the "essential objective in creating wireless policy is to achieve nationwide compatibility." *Id*.

10  It cautioned that, "[t]o allow state claims such as these asserted by Plaintiff to proceed would be to

11  question the judgment of the FCC on the issue" and "interfere with the goal of national uniformity

12  in telecommunications." *Id*.

13      The same reasoning applies here.  To require CNN only to provide closed captions on all

14  news videos posted on CNN.com under California law would effectively circumvent the federal

15  objective in establishing uniform standards for closed captioning on all video programming, and the

16  time-table on which they will apply.  It therefore makes sense in this context, as discussed at length

17  above, that Section 713 expressly prohibits private rights of action. *See* 47 U.S.C. § 613(j).  *See*

18  *supra* at 10; *see also infra* at 17.

19      The unique concerns the Internet raises regarding state and federal jurisdictional authority

20  also supports the need for uniform *federal* standards.  In one oft-cited case, *American Libraries*

21  *Ass'n v. Pataki*, 969 F. Supp. 160 (S.D.N.Y 1997), the Internet is described as a "decentralized,

22  global communications medium" whose "unique nature … highlights the likelihood that a single

23  actor might be subject to haphazard, uncoordinated, and even outright inconsistent regulation by

24  states that the actor never intended to reach and possibly was unaware were being accessed." *Id*. at

25  164, 168.  *See also id*. at 169 (noting that "geography [ ] is a virtually meaningless construct on the

26  Internet").  Other courts have relied on *Pataki* to invalidate state laws governing activities on the

27

28

14

DAVIS WRIGHT TREMAINE LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CA  94111-3611
(415) 276-6500
Fax: (415) 276-6599

Internet.[6]  The logic of these cases applies with dual force here, where not only does the unbounded nature of the Internet make closed captioning mandates imposed under California-specific law unsupportable, the CVAA's targeting of online video for federally established captioning standards underscores the need for preemption.

**B.     The FCC's Exclusive Jurisdiction Over Closed Captioning Precludes This Court From Granting Plaintiffs' Requests For Relief.**

Plaintiffs' Complaint must also be dismissed because Congress expressly gave the FCC exclusive jurisdiction over closed captioning matters, leaving this Court without subject matter jurisdiction to hear Plaintiff's claims.  *See*, *e.g.*, *United States v. Michigan Nat'l Corp.*, 419 U.S. 1, 5 n.2 (1974) ("[W]here the administrative agency has exclusive jurisdiction to consider the complaint initially brought in court" it "must of course dismiss the action.").  *Cf.*, *Capital Serv., Inc. v. NLRB*, 347 U.S. 501, 504-05 (1954) ("[W]here Congress … has vested a federal agency with exclusive jurisdiction over a subject matter and the intrusion of a state would result in conflict of functions," proceedings may be enjoined "to preserve the federal right.").  Section 713 specifically charged the FCC with "ascertain[ing] the level at which video programming is closed captioned," and directed it to "prescribe such regulations as are necessary."  *See* 47 U.S.C. §§ 613(a), (b)(1).  Section 713 also directed the FCC to establish "an appropriate schedule of deadlines for the pro-vision of closed captioning of video programming," and authorized the FCC to exempt certain providers and programs based on a determination of undue burden, which included consideration of the nature and cost of closed captioning, the impact on the operation of the provider or program-mer, and the financial resources of the provider or programmer.  *See id*. §§ 613(c)-(e).

More recently, Congress recognized that viewers are increasingly consuming video over distribution channels using Internet protocol ("IP"), including videos on websites, and enacted the

---

[6]  *See American Booksellers Found. v. Dean*, 342 F.3d 96 (2d Cir. 2003) (invalidating state law outlawing distribution of material harmful to minors because non-state residents who post to web would be subject to prosecution in state); *PSINet, Inc. v. Chapman*, 362 F.3d 227 (4th Cir. 2004); *ACLU v. Johnson*, 194 F.3d 1149 (10th Cir. 1999); *Center for Democracy & Tech. v. Pappart*, 337 F. Supp. 2d 606 (E.D. Pa. 2004).

CVAA.  Among other things, it amended Section 713 to direct the FCC to update and extend its captioning rules to address IP videos, including those on websites like CNN.com, that previously appeared on television with captions.  CVAA § 202(b) (amending 47 U.S.C. § 613(c)(2)(A)).  As with the original captioning authorization, the CVAA requires the FCC to set a schedule of dead-lines for captioning online video, and authorizes it to exempt any service, program or equipment if compliance would be economically burdensome.  *Id*. (amending 47 U.S.C. §§ 613(c)(1), (c)(2)(C) and (c)(2)(D)).  *The FCC must issue its revised rules by January 13, 2012.*[7]

The federal law's plain language reflects Congress' intent to vest the FCC with exclusive jurisdiction over closed captioning matters, including the extent to which Section 713 plainly states: "The [FCC] shall have exclusive jurisdiction with respect to any complaint under [Section 713]." 47 U.S.C. § 613(j) ("Nothing in this section shall be construed to authorize any private right of action to enforce any requirement of this section or any regulation thereunder.").  *See also* 47 C.F.R. § 79.1(h) (same).  In addition, no other body is authorized to set binding closed captioning standards, or to enforce compliance.  Even insofar as the ADA makes captioning an auxiliary aid in some contexts, *see*, *e.g.*, 42 U.S.C. § 12103(1)(A)-(B); 28 C.F.R. § 36.303(b)(1)-(2), when it comes to video programming, the FCC alone regulates closed captioning.  *See*, *e.g.*, *Zulauf*, 28 F. Supp. 2d at 1023.  Plainly, the FCC exclusively holds responsibility for closed captioning standards, including those at issue in this litigation.[8]

---

[7]  As noted above, the recently issued VPAAC Report includes recommendations for rules govern-ing the captioning of online video.  *See* Exh. I to Burke Declaration.  The VPAAC Report's July 13, 2011 issue date establishes January 13, 2012, as the date by which the FCC must adopt rules governing the captioning of IP video covered by the CVAA and proposes the deadline(s) by which those disseminating them must comply.  *See* CVAA § 202(b) (requiring issuance of FCC regulations no later than six months after issuance of VPAAC Report).

[8]  That the FCC has not yet issued rules to implement the IP video captioning requirements of the CVAA is irrelevant.  The nexus between the Telecommunications Act and CVAA shows that, with passage of the CVAA, Congress intended to preserve uniform regulation of captioning by maintain-ing the FCC's exclusive jurisdiction over closed captioning of Internet videos.  As noted, the 1996 Act (for traditional programming) and CVAA (for online videos) both require the FCC to establish regulations for closed captioning, develop compliance deadlines, and determine how and when exemptions should apply.  Such a comprehensive regulatory scheme for closed captioning, both

16

DAVIS WRIGHT TREMAINE LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CA  94111-3611
(415) 276-6500
Fax: (415) 276-6599

The prohibition in Section 713 that expressly bars private causes of action like Plaintiffs' claims here also further emphasize the FCC's exclusive role, an express directive that federal courts, as well as the FCC itself, recognize.  In *Zulauf*, a federal district court dismissed a complaint asking it to require the defendant to provide closed captioning on all broadcasts, because the court found it lacked subject matter jurisdiction.  Although plaintiff filed claims under the ADA (and federal Rehabilitation Act, 29 U.S.C. § 794) without mention of Section 713, the court nevertheless acknowledged that, "in order to determine whether [defendant] has to provide closed captioning," the court "would have to interpret [Section 713] and the FCC's implementing regulations."  *Id*. at 1023.  Noting that Section 713 was "the latest and most specific statute addressing a broadcaster's duty to provide closed captioning for its video programming," the court held that:

> Congress's intent in giving the FCC exclusive jurisdiction over any [Section 713] complaints … was to promote uniformity in the area of closed captioning ….  [T]he FCC has expertise in the area … and has already taken steps to determine how much closed captioning broadcasters can reasonably provide.  It would be inefficient and a waste of judicial resources for the Court to try and reinvent the wheel and determine the proper rate at which broadcasters should be providing closed captioning for their programming.

*Id*. at 1023-24.  *See also Johnson v. Hairston*, 2007 WL 748479 (M.D Ala. Mar. 8, 2007) (dismissing for lack of subject matter jurisdiction as FCC's captioning regulations provided administrative remedies that must be followed with regard to complaints, private rights of action are prohibited, and exclusive jurisdiction lies with the FCC with respect to closed captioning complaints); *Closed Captioning and Video Description of Video Programming*, Report and Order, 13 FCC Rcd. 3272, ¶ 27 (1997) ("Both Section 713 and the legislative history indicate that Congress intended to give us sufficient jurisdiction to ensure the accessibility of video programming.").

Even if the Court does not find dismissal warranted on grounds of the FCC's exclusive jurisdiction over closed captioning, it should, at the very least, suspend this proceeding and refer to the FCC the closed captioning issues raised here under the doctrine of primary jurisdiction.

---

online and off, demonstrates that Congress intended the FCC to have exclusive jurisdiction over closed captioning matters generally.

17

GREATER LOS ANGELES AGENCY ON DEAFNESS, INC. v. TIME WARNER INC.
CASE NO. 4:11-CV-03458-LB – CNN'S SPECIAL MOTION TO STRIKE

DAVIS WRIGHT TREMAINE LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CA  94111-3611
(415) 276-6500
Fax: (415) 276-6599

Primary jurisdiction depends on "the extent to which Congress, in enacting a regulatory scheme, intends an administrative body to have the first word on issues arising in judicial proceedings." *United States v. General Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987) (citing *United v. RCA*, 358 U.S. 334, 339 (1959)).  The Ninth Circuit has identified four factors that are "uniformly present" in cases where primary jurisdiction is properly invoked: (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme [which] (4) requires expertise or uniformity in administration."  *Id*.  When primary jurisdiction is found, courts generally have discretion whether to stay or dismiss without prejudice.[9]

At a minimum, referral to the FCC of the closed captioning issues raised here is warranted, under the *General Dynamics* factors:  (1) closed captioning issues must be resolved (2) by the FCC, to whom Congress granted expansive closed captioning rulemaking and enforcement authority, thereby (3) subjecting an industry (*e.g.*, video programmers and distributors) and an activity (dissemination of online video) to a comprehensive regulatory scheme that (4) requires the FCC's expertise and uniformity in the administration of rules and regulations.  Furthermore, the absence of state or federal rules for Internet-video closed captioning means this issue is one of first impression, which underscores the efficacy of referral to the FCC.  *See*, *e.g.*, *Lyon v. Gila River Indian Cmty.*, 626 F.3d 1059, 1075 (9th Cir. 2010).  As the Ninth Circuit has held, "the primary jurisdiction doctrine … should be used if a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency, and if protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which

---

[9]  *See, e.g.*, *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1091 (9th Cir. 2006) ("Whether to stay or dismiss without prejudice [under] primary jurisdiction is a decision within the discretion of the district court."); *Clark v. Time Warner Cable*, 523 F.3d 1110, 1115 (9th Cir. 2008); c*f.*, *Davel*, 460 F.3d at 1091 (noting courts may dismiss "if the parties would not be unfairly disad-vantaged," *e.g.*, where there is no "risk that the statute of limitations may run … pending agency resolution").

18

DAVIS WRIGHT TREMAINE LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CA 94111-3611
(415) 276-6500
Fax: (415) 276-6599

GREATER LOS ANGELES AGENCY ON DEAFNESS, INC. v. TIME WARNER INC.
CASE NO. 4:11-CV-03458-LB – CNN'S SPECIAL MOTION TO STRIKE

administers the scheme."  *Id.* (internal quotation marks and citation omitted).  Such is clearly the case here.

**C.     Plaintiffs' Complaint Poses An Unconstitutional Prior Restraint And Regulates CNN.com's Speech In Violation Of The First Amendment And California Law.**

Plaintiffs ask this Court to order CNN – and CNN *alone* – to include real-time closed captioning of all news videos hosted on CNN.com, which is among the world's most frequently visited news websites.  Toppo Decl. ¶ 2,11.  The injunctive relief requested by Plaintiffs will uniquely prohibit CNN from disseminating news videos on CNN.com about breaking news events unless they are closed-captioned, using an as-yet unspecified and untested captioning process to be dictated by Plaintiffs.  None of CNN's news competitors will be burdened by this requirement.  Because such an order would "freeze," not just chill, CNN's exercise of its First Amendment rights, *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976), it qualifies as a "classic example[ ] of [a] prior restraint[ ]."  *Alexander v. United States*, 509 U.S. 544, 549 (1993).

As the United States Supreme Court has made clear, "prior restraints on speech … are the most serious and the least tolerable infringement on First Amendment rights."  *Nebraska Press Ass'n*, 427 U.S. at 559.  Permitting the judicial branch to restrain publication of information by the press would undermine the "main purpose" of the First Amendment, which is "to prevent all such previous restraints upon publications as had been practiced by other governments."  *Id.* at 557.  Accordingly, any effort to restrain publication bears an extremely "heavy presumption against its constitutional validity."  *New York Times Co. v. United States*, 403 U.S. 713, 714 (1971) (per curiam).  "[T]his 'most extraordinary remedy'" may be considered "only where the evil that would result from the reportage is both great and certain and cannot be militated by less intrusive measures."  *CBS v. Davis*, 510 U.S. 1315, 1318 (1994) (Blackmun, J., in chambers).  Such orders should be granted only in "exceptional cases."  *Near v. Minnesota*, 283 U.S. 697, 716 (1931).[10]

---

[10]  California courts have also universally rejected prior restraints.  Indeed, because the guarantee of free speech and press found in article I, section 2(a) of the California Constitution "is more definitive and inclusive than the First Amendment," the burden on a party seeking a prior restraint in this state is even more onerous, and potentially insurmountable.  *In re Marriage of Candiotti*, 34 Cal. App. 4th 718, 724 (1995).  For well over a century, California courts have relied on this state

**DAVIS WRIGHT TREMAINE** LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CA  94111-3611
(415) 276-6500
Fax: (415) 276-6599

1   That the restraint imposed on CNN may only be temporary is of no moment.  *Nebraska*

2   *Press Ass'n*, 427 U.S. at 559 ("[T]he burden on the Government [to justify prior restraints] is not

3   reduced by the temporary nature of a restraint ….   A prior restraint … has an immediate and irre-

4   versible sanction."); *id*. at 609 (Brennan, J., concurring).  *See also Freedman v. Maryland*, 380 U.S.

5   57, 59 (1965) (determination of validity of prior restraint "must [ ] be limited to … the shortest

6   fixed period compatible with sound judicial resolution"); *CBS v. District Court*, 729 F.2d 1174,

7   1177 (9th Cir. 1983) ("The first amendment informs us that the damage resulting from a prior

8   restraint – even a prior restraint of the shortest duration – is extraordinarily grave.").  This is

9   particularly true where, as here, millions of viewers regularly rely on CNN.com to learn about

10  breaking news events occurring throughout the world.[11]

11  Applying the Unruh Act and the CDPA to CNN.com in such manner also would be "a

12  restriction on the content of protected speech [that] is invalid unless [Plaintiffs] can demonstrate [ ]

13  it passes strict scrutiny – that is, unless it is justified by a compelling government interest [that it]

14  is narrowly drawn to serve," a standard that "[i]t is rare [for] a regulation" to survive."  *Brown v.*

15  *Entertainment Merchs. Ass'n*, 131 S. Ct. 2729, 2738 (2011).  Plaintiffs' proposed injunction could

16  also be viewed as an order barring CNN.com from posting online video without captions, *see*, *e.g.*,

17  Compl. ¶ 65, but that only makes matters worse (if that is possible).  As the Supreme Court recently

18  ─────────────────────────────────────

19  guarantee (*see Dailey v. Superior Court*, 112 Cal. 94, 97 (1896), as well as the First Amendment, in
    rejecting prior restraints, which the California Supreme Court has denounced as "the most severe

20  method of intellectual suppression known in modern times."  *Flack v. Municipal Court*, 66 Cal. 2d
    981, 988 n.5 (1967).  As these cases demonstrate, there are no interests present here that conceiv-

21  ably could warrant the prior restraint Plaintiffs seek to impose on CNN.  Even in Unruh Act cases,
    California courts have avoided applying the Act to prohibit speakers from speaking unless they

22  comply with it as an impermissible prior restraint.  *See*, *e.g.*, *Ingels v. Westwood One Broad. Servs.,*
    *Inc.*, 129 Cal. App. 4th 1050, 1060 (2005) (applying § 425.16 anti-SLAPP provision).  *Cf.*, *Long v.*

23  *Valentino*, 216 Cal. App. 3d 1287 (1989) (even if the "First Amendment does not shield a speaker

24  who uses words [ ] to violate the Unruh Act, [ ] the speech itself may not be the object of prior
    restraint").

25  [11]  There can be little doubt that "delay inherent[ly] … could itself destroy the contemporary news

26  value of [ ] information the press seeks to disseminate."  *Nebraska Press Ass'n*, 427 U.S. at 609
    (Brennan, J., concurring); *see* Smith Decl. ¶¶ 13, 23 (anticipated delays caused by closed cap-

27  tioning).

28

20

**DAVIS WRIGHT TREMAINE** LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CA  94111-3611
(415) 276-6500
Fax: (415) 276-6599

reaffirmed, these are merely two sides of the same coin, in that "the 'distinction between laws burdening and laws banning speech is but a matter of degree,'" *Sorrell v. IMS Health, Inc.*, 131 S. Ct. 2653, 2664 (2011) (quoting *United States v. Playboy Entm't Group, Inc*., 529 U.S. 803, 812 (2000)), and again, viewing the relief sought as a ban on CNN posting news video to CNN.com unless captioned would be an unlawful prior restraint carrying a heavy presumption of invalidity. *E.g.*, *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1023 (9th Cir. 2009).

Judicially compelling CNN to add captions to all news videos hosted on CNN.com ahead of federal requirements will compel CNN to speak in ways it otherwise would not, in violation of the First Amendment.  Even given the Unruh Act's statutory objectives, California law recognizes that it cannot impose obligations to speak, or that alter a speaker's message, in the name of non-discrimination.  *See, e.g.*, *Ingels*, 129 Cal. App. 4th 1050.  *Ingels* held that the plaintiff was unlikely to prevail on his Unruh Act age-discrimination claim based on a radio show not allowing him to participate given the age discrepancy between him and the show's topic/target-audience, noting that Defendants' "choice of which callers to allow on the air is part of the content of speech."  *Id*. at 1074.  Such intrusion into broadcasters' "First Amendment right to control the content of their program" was not required by the Act.  *Id*.  There is nothing about the CDPA that would compel a different conclusion as far as that law is concerned.  Other California cases similarly indicate that, when First Amendment rights are implicated by applying the Unruh Act, countervailing interests require additional scrutiny.[12]

Even under a less stringent "intermediate scrutiny" test, which is the minimum that would apply, *see, e.g.*, *Ingels*, 129 Cal. App. 4th at 1074, interpreting the Unruh Act and the CDPA to force CNN to prematurely caption its online news videos using current error-laden technology would fail constitutional review, because it would not sufficiently advance a government interest

---

[12]  *See, e.g.*, *Ingels*, 129 Cal. App. 4th at 1072 (citing *Hart v. Cult-Awareness Network*, 13 Cal. App. 4th, 777, 790-93 (1993) (application of Unruh Act to require defendants to accept plaintiffs as members would "place a heavy burden on [the] constitutionally protected freedom of association," which no compelling interest in preventing, *e.g.*, religious discrimination, supported infringing)).

(even if it is arguably important), and would burden more speech than necessary.  *Turner Broad.*

*Sys., Inc. v. FCC*, 512 U.S. 622, 663 (1994).  While there is no dispute that helping ensure the deaf

and hearing impaired fully and equally enjoy audiovisual content online is a worthy objective, it is

far less obvious that compelling CNN to caption its news videos before federal regulations are

announced in January 2012 will substantially advance that interest.  CNN competes with local and

national news outlets for its audience, and only CNN will be subject to this Court's captioning

order, which places an unfair and undue burden on CNN.com as a news outlet.  Furthermore, given

the errors and resulting inaccuracies that current, non-standardized technology can introduce (Smith

Decl. ¶ 15-17, 23), CNN.com has a First Amendment right not to have its speech muddled or

perceived as negligently presented, in such manner as the relief sought here would require.

Little also would be gained by impermissibly regulating CNN's speech, while all await

the FCC regulations.  Even now, the vast majority of news videos available on CNN.com already

appear alongside accompanying textual information that track that audio portion of the video.

Toppo Decl. ¶ 19; *see also* Compl. ¶¶ 9, 12.  Compelling CNN to provide closed captioning would

impose a burden on CNN alone that will only incrementally advance interests underlying the Unruh

Act or the CDPA.  While Plaintiffs may prefer real time closed captioning to reading the text of

new stories currently available on CNN.com, judicially compelling this result will accomplish

relatively little and come with an impermissible cost.  Because the FCC will issue regulations under

the CVAA by mid-January, governing how and when captioning must be provided for online

videos such as those at issue here, any government interest advanced by applying the Unruh Act

and the CDPA as Plaintiffs demand would convey benefits limited to the interval between the time

such relief is ordered and the time CVAA regulations require closed captioning.  This inherently

ephemeral nature of the relief sought is not a sufficient basis to interfere with CNN's

constitutionally-protected rights.[13]

---

[13]  This is certainly not to minimize the value to the deaf and hearing impaired of having an improved viewing experience even during this short time, but rather, given the unprecedented prior restraint that will be imposed on CNN's speech, it is offered to place in context the substantial burden that Unruh Act and CDPA compelled video captioning would uniquely place on CNN.

DAVIS WRIGHT TREMAINE LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CA  94111-3611
(415) 276-6500
Fax: (415) 276-6599

GREATER LOS ANGELES AGENCY ON DEAFNESS, INC. v. TIME WARNER INC.
CASE NO. 4:11-CV-03458-LB – CNN'S SPECIAL MOTION TO STRIKE

1    Regardless how much online video would be rendered more accessible by mandating

2    addition of captions on news videos hosted on CNN.com, doing so also would burden far more

3    speech than is constitutionally permissible, because CNN would suffer substantial economic

4    burdens from the compelled captioning Plaintiffs seek.  As explained in the Smith Declaration,

5    adding captions to online video (even video that was previously shown on TV with closed

6    captions), requires different coding and technical steps, industry-wide consensus standards for

7    which are still being developed.  Smith Decl. ¶¶ 14-21.  Until such standards are universally

8    adopted, explained, and incorporated into FCC regulations, CNN will be, at most, able only to

9    make its "best guess" what those standards ultimately will entail.  *Id.* ¶ 23-24.

10    CNN also would be required to take on an added production expense that its competitors are

11    able to avoid, or at least delay until the CVAA compels such investment by federal law, and would

12    be required to do so without uniform standards.  CNN will be at a distinct disadvantage vis-à-vis

13    other entities engaged in the same type of speech.  This economic impact must be accounted for

14    elsewhere in CNN's operations and, along with the delay interposed in the posting of online news

15    videos so CNN.com can caption them (while its competitors escape having to do so pre-CVAA

16    rules), the consequence would likely be CNN.com posting fewer news videos, or delaying their

17    posting.  As a result, revenues which fund reporting and dissemination of news would be adversely

18    affected.  Toppo Decl. ¶¶ 14, 17-18.

19    It is also unlikely CNN will be unable to predict what standards the FCC will adopt

20    under the CVAA for captioning online video, and/or that the FCC proceeding will take unexpected

21    turns or require unanticipated industry-wide compromises.  In that case, if CNN is compelled to

22    implement technical measures that *differ* from the regulatory requirements that the FCC ultimately

23    adopts, because this Court will have ordered CNN to do so in advance of the CVAA's FCC-

24    specified compliance deadline, CNN will pay a double price because it will have to abandon its

25    substantial, legally-obsolete investment in non-FCC-compliant captioning technology.  Toppo

26    Decl.¶ 17; Smith Decl. ¶ 24.  The proper approach, and that which the First Amendment requires, is

27    to allow CNN.com to remain a part of the industry-wide compliance with FCC regulations that will

28

DAVIS WRIGHT TREMAINE LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CA  94111-3611
(415) 276-6500
Fax: (415) 276-6599

set a level playing field for all online video news providers and ensure the online access desired by Plaintiffs. Not only does this honor the supremacy of federal law, it avoids ordering CNN alone to adopt technologically inferior measures that will alter its content, violating its protected constitutional rights.

Under settled First Amendment and California law, and because of the substantial burdens imposed by Plaintiffs' requested relief, the Court must reject Plaintiffs' claim that California law requires CNN to add captioning to its online news videos. The injunctive relief that Plaintiffs' request will impermissibly interfere with CNN's constitutionally-protected right to report on news about matters in the public interest.[14]

**D.    Plaintiffs Cannot Prevail Because The Requested Relief Would Violate The Dormant Commerce Clause.**

Plaintiffs' Complaint also should be dismissed because California's Unruh Act and the CDPA, if applied to the news videos hosted on CNN.com as Plaintiffs wish, would impermissibly burden interstate commerce in violation of the dormant Commerce Clause. On its face, the federal Constitution's Commerce Clause grants Congress affirmative authority to regulate interstate commerce. Courts also consistently apply it to prohibit state actions that impede interstate commerce, based on an inference, commonly referred to as the "dormant Commerce Clause," that promotes national markets and the free flow of commerce between states by preventing protectionist policies. *See*, *e.g.*, *National Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 523 (9th Cir. 2009).

In *Healy v. Beer Institute*, 491 U.S. 324 (1989), the U.S. Supreme Court outlined the analytic framework for Commerce Clause analyses as follows:

---

[14]   Construing the Unruh Act and the CDPA to deny Plaintiffs the compelled-speech relief they seek is especially proper given the well-established obligation that courts construe such laws to avoid constitutional tension. *E.g.*, *Jones v. United States*, 529 U.S. 848, 857 (2000); *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 575 (1988).

GREATER LOS ANGELES AGENCY ON DEAFNESS, INC. v. TIME WARNER INC.
CASE NO. 4:11-CV-03458-LB – CNN'S SPECIAL MOTION TO STRIKE

**DAVIS WRIGHT TREMAINE** LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CA  94111-3611
(415) 276-6500
Fax: (415) 276-6599

1.  "First, the Commerce Clause precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State." *Id*. at 336.

2.  "Second, a statute that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority and is invalid regardless of whether the statute's extraterritorial reach was intended by the legislature. The critical inquiry is whether the practical effect of the regulation is to control conduct beyond the boundaries of the State." *Id*.

3.  "Third, the practical effect of the statute must be evaluated not only by considering the consequences of the statute itself, but also by considering how the challenged statute may interact with the legitimate regulatory regimes of other States and what effect would arise if not one, but many or every, State adopted similar legislation. Generally speaking, the Commerce Clause protects against inconsistent legislation arising from the projection of one state regulatory regime into the jurisdiction of another State." *Id*. at 336-37.

Under this rubric, where a state statute "directly regulates or discriminates against interstate commerce," courts have "generally struck down the statute without further inquiry." *Id*. at 337 n.14. If, however, a state statute "has only indirect effects on interstate commerce and regulates evenhandedly," the court will "examine[ ] whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits." *Id*. *See also Yakima Valley Mem. Hosp. v. Washington State Dep't of Health*, 2011 WL 3629895, at *7 (9th Cir. Aug. 19, 2011).

Plaintiffs' demand to have this Court apply the Unruh Act and the CDPA to require closed captioning on all news videos hosted on CNN.com "directly" impacts interstate commerce because its practical effect is to regulate activities wholly outside the State. *See Gravquick A/S v. Trimble Navigation Int'l, Ltd.*, 323 F.3d 1219, 1224 (9th Cir. 2003) (citing *Healy*). As a threshold issue, applying these broad California laws to require CNN to provide real time captioning on all news videos hosted on CNN.com would apply to commerce that takes place "wholly outside of the State's borders," *i.e.*, CNN's dissemination of news online from Atlanta and other non-California locations, to an audience consisting – by a great preponderance – of non-Californians. *Healy*, *supra*. As explained above, there is no feasible way for CNN.com to create one version of its online videos with captioning solely for consumption by visitors in California, and another, caption-less version for everyone outside the state. Applying the Unruh Act and the CDPA as

25

DAVIS WRIGHT TREMAINE LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CA  94111-3611
(415) 276-6500
Fax: (415) 276-6599

Plaintiffs insist will require captions that will be seen far beyond the California's borders – in fact, they will be seen worldwide.  *See supra* at 12-15.

While CNN.com's videos are accessible by Californians, and thus "ha[ve] effects within the State," *Healy*, 491 U.S. at 336, the predominant impact of Plaintiffs' application of the Unruh Act and the would extend to commerce occurring wholly *outside* California.  *Cf.*, *American Booksellers*, 342 F.3d at 96 ("Because the internet does not recognize geographic boundaries, it is difficult, if not impossible, for a state to regulate internet activities without projecting its legislation into other States.") (internal quotation marks omitted).  The practical effect would impermissibly regulate interstate online services well beyond California's boundaries, and potentially subject CNN to inconsistent legislation from other states.  *See NCAA v. Miller*, 10 F.3d 633, 640 (9th Cir. 1993) (Nevada law prescribing procedures for NCAA enforcement proceedings violated Commerce Clause by directly regulating interstate commerce beyond Nevada's boundaries, putting NCAA, and whatever other national collegiate athletic associations may exist, in jeopardy of being subjected to inconsistent legislation).

Even if the requested application of the Unruh Act and the CDPA is viewed as only "indirectly" impacting interstate commerce (which is unlikely, given the foregoing), "the burden on interstate commerce clearly exceeds the local benefits."  *Healy*, 491 U.S. at 337 n.14.  While Plaintiffs may argue California has a legitimate interest in providing disabled Californians greater access to videos on CNN.com, the burden on interstate commerce here should be viewed as far too great for such "local" benefits to overcome.  Given that impending federal regulations (due by January, 2012) will address the issues at hand (*i.e.*, closed captioning of Internet videos), and will supplant whatever might be required under the Unruh Act and/or the CDPA, the scope of relief Plaintiffs seek is negligible, relatively speaking.  The same ephemeral nature of any local benefits that made the relief sought unconstitutional for purposes of First Amendment scrutiny, *see supra* at 22, also makes it too slight to support the constitutionality under the dormant Commerce Clause of applying the Unruh Act and the CDPA as Plaintiffs seek.  Conversely, the order sought by Plaintiffs by this Court would have a substantial and impermissible extraterritorial impact on the

DAVIS WRIGHT TREMAINE LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CA  94111-3611
(415) 276-6500
Fax: (415) 276-6599

provision of online videos, particularly where uniform closed captioning standards are necessary to the development and distribution of closed captions in an economically and technically feasible manner.[15] In addition, because the burden(s) imposed would delay, or even prevent (due to cost, timeliness, or other reasons), the delivery of news – core First Amendment-protected activity – the burden is especially weighty. This drastic imbalance violates the dormant Commerce Clause. *See*, *e.g.*, *ACLU v. Johnson*, 194 F.3d at 1161-62 (citing *American Libraries Ass' v. Pataki*, 969 F. Supp. at 178).

**E.      Plaintiffs Cannot Prove A Probability of Prevailing on their CDPA Claim.**

Plaintiffs allege that CNN violates the CDPA by failing to caption news videos that are hosted on CNN.com, but the CDPA does not apply to websites. It provides that "[i]ndividuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, … public facilities, and other public places." Cal. Civ. Code § 54(a). Such "full and equal access" generally is defined under Section 54.1 to mean that which complies with regulations developed under the ADA, or under state law, if the latter impose a higher standard. *See* Cal. Civ. Code § 54.1(a)(3) (for transportation); *Urahausen v. Longs Drug Stores Cal., Inc.*, 155 Cal. App. 4th 254, 263 (2007) (access to parking). No published appellate decision has interpreted the CDPA to apply to a web-site that is not related to a brick and mortar place of public accommodation. Indeed, the "Ninth Circuit has declined to join those circuits which have suggested that a 'place of public accommo-dation' may have a more expansive meaning." *National Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 952 (N.D. Cal. 2006). *See also Turner v. American Med. Colls.*, 167 Cal. App. 4th 1401, 1412-13 (2008) (court found no violation of the CDPA where there was no denial of physical

---

[15]  *See NCAA*, 10 F.3d at 640 n.8 (district court's balancing of state interest versus national uni-formity was "exactly right") (citing *NCAA v. Miller*, 795 F. Supp. 1476, 1484-85 (D. Nev. 1992), which found that, while Nevada law imposing state-specific procedural rules for NCAA enforce-ment proceedings was legitimate, extraterritorial effect was substantial because it "severely restricts the NCAA from establishing uniform rules to govern and enforce interstate collegiate practices," thereby allowing state to "dictate enforcement proceedings in states other than Nevada").

GREATER LOS ANGELES AGENCY ON DEAFNESS, INC. v. TIME WARNER INC.
CASE NO. 4:11-CV-03458-LB – CNN'S SPECIAL MOTION TO STRIKE

**DAVIS WRIGHT TREMAINE** LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CA  94111-3611
(415) 276-6500
Fax: (415) 276-6599

access to testing facility).  *See* also *Urahausen,* 155 Cal. App. 4th at 261; *Anderson v. County of Siskiyou,* 2010 WL 3619821 (N.D. Cal. Sept. 13, 2010) (CDPA "only guarantees physical access to a facility"); *Madden v. Del Taco, Inc.,* 150 Cal. App. 4th 294, 301 (2007) (Section 54 "has always drawn meaning from a growing body of legislation intended to reduce or eliminate the *physical impediments* to participation of physically handicapped persons….") (emphasis added; internal quotation marks omitted).

Thus, consistent with the narrow interpretation of the CDPA taken by the courts, the CDPA applies only to *facilities and physical places* open to the public.  Here, Plaintiffs seek to compel CNN to provide closed captioning on all news videos hosted on CNN.com.  But CNN.com is a website; there is no physical place of accommodation in California at issue.  As a result, Plaintiffs' CDPA claim fails on its face.  Plaintiffs therefore cannot show a probability of prevailing on their CDPA claim.

**F.    Plaintiffs Cannot Prove a Probability of Prevailing on their Unruh Act Claim Because They Were Not Treated Differently Because of their Disabilities.**

Section 51(b) of the Unruh Act states that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  The law has been broadly interpreted by the courts, both federal and state, but "[d]espite its broad application, the Unruh Civil Rights Act does not extend to practices and policies that apply equally to all persons."  *Turner,* 167 Cal. App. 4th at 1408.

In 1991, the California Supreme Court held in *Harris v. Capital Growth Investors XIV* that proof of intentional discrimination was required to establish a violation of the Unruh Act and that a neutral policy, *applied equally but having a disparate impact* on a particular protected class, did not violate the Act.  52 Cal. 3d 1142, 1172 (1991).  The Unruh Act "explicitly exempts standards that are applicable alike to persons of every sex, color, race, religion, ancestry, national origin, or blindness or other physical disability."  *Id*. at 1172 (internal quotation marks omitted).  A policy

DAVIS WRIGHT TREMAINE LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CA  94111-3611
(415) 276-6500
Fax: (415) 276-6599

1  that is neutral on its face is not actionable under the Unruh Act, even when it has a disproportionate

2  impact on a protected class.  *Id.* at 1172-73; *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App.

3  4th 1224, 1238 (2007).

4       The plaintiffs in *Harris* argued that minimum income requirements to rent an apartment

5  were discriminatory toward women, because women generally made less money than men and

6  would be turned down for rentals on a more frequent basis than men.  But the Court found that

7  such a claim could not be maintained under Section 51, concluding that the Unruh Act requires

8  allegations of "*willful, affirmative misconduct* on the part of those who violate the Act," and that

9  a plaintiff must allege more than the disparate impact of a facially neutral policy on a particular

10 group.  *Id.* at 1174 (emphasis added); *see also Koebke v. Bernardo Height Country Club*, 36 Cal.

11 4th 824, 853 (2005) ("Adoption of the disparate impact theory [to the Unruh Act] would expose

12 businesses to new liability and potential court regulation of their day-to-day practices in a manner

13 never intended by the Legislature.  This we decline to do.").

14      California courts have repeatedly applied this rule and reached the same conclusion.  For

15 example, in *Belton*, the court of appeal rejected an argument that Comcast intentionally discrimi-

16 nated against blind customers because it offered its music packages only with its television pack-

17 ages, and blind customers could not fully use the television.  *Id.* at 1237-38.  In line with the *Harris*

18 and *Koebke* holdings, the *Belton* court held that a facially neutral policy offering the same package

19 deal on music and television to everyone did *not* violate the Unruh Act because it was applied

20 equally to all customers and did not target those with visual disabilities – even though it may have

21 had a disparate impact on them.  *Id.  See also Turner v. American Med. Colls.*, *supra* at 27-28.

22      Federal courts agree.  For example, in *Young v. Facebook, Inc.*, 2011 WL 1878001 (N.D.

23 Cal. May 17, 2011), the plaintiff argued that Facebook's customer service system was difficult for

24 her to use due to her bipolar disorder.  The court held that she could not maintain a claim under

25 Section 51 because she failed to allege any intentionally discriminatory acts.  In other words, the

26 plaintiff did not allege, as required, that Facebook treated her differently *because* of her disability

27 or that Facebook applied its policies in a way that *targets* individuals with disabilities.  As a result,

28

DAVIS WRIGHT TREMAINE LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CA  94111-3611
(415) 276-6500
Fax: (415) 276-6599

GREATER LOS ANGELES AGENCY ON DEAFNESS, INC. v. TIME WARNER INC.
CASE NO. 4:11-CV-03458-LB – CNN'S SPECIAL MOTION TO STRIKE

1    she was unable to maintain her claims under Section 51.  *Id.; see also Torres v. AT&T Broadband,*

2    *LLC*, 158 F. Supp. 2d 1035, 1038 (N.D. Cal. 2001) (digital cable service does not fall under ADA's

3    12 enumerated categories of "public accommodation" and, thus, the ADA did not require a channel

4    menu to be accessible to the visually impaired).

5          The same rule applies here.  For legitimate reasons outlined in the Smith Declaration,

6    CNN.com does not currently offer closed captioning to anyone accessing news videos hosted on its

7    website.  Its policy is facially neutral.  Plaintiffs cannot present any evidence that the policy was put

8    in place to target persons with hearing disabilities or that they were treated differently because of

9    their disabilities.  Thus, Plaintiffs' claim under Section 51 fails as a matter of law, because there is

10   no evidence of intentional discrimination by CNN and no evidence that CNN posts news videos on

11   CNN.com in a way that targets people with hearing disabilities.

12         Finally, in the Complaint, Plaintiffs attempt to turn their disparate impact claim into a case

13   of intentional discrimination by alleging that it requested in a single letter that Time Warner

14   provide captioning for its videos on CNN.com.  Plaintiffs allege that "Time Warner refused this

15   request and has therefore intentionally excluded deaf and hard of hearing visitors to CNN.com

16   access to the videos offered to hearing visitors."  Compl. ¶ 32.  That effort does not remedy the

17   fatal flaw in their argument, because *Plaintiffs still cannot show that they were treated differently*

18   *because of their disabilities*, a necessary element of their claim under the Unruh Act.  *See Harris*,

19   52 Cal. 3d at 1172.  To prove a claim of intentional discrimination under the Unruh Act, "a plaintiff

20   must allege more than the disparate impact of a facially neutral policy on a particular group."

21   *Young*, 2011 WL 1878001, at *3 (citing *Koebke*, 36 Cal. 4th at 854.)  Plaintiffs' Complaint makes

22   clear that Plaintiffs were *not* treated differently from anyone else because of their disabilities.  *See*

23   *generally*, Complaint.

24         Moreover, with regard to CNN's alleged "refusal" to accommodate, CNN and Time

25   Warner's years-long commitment and continuing contributions to captioning technologies and

26   the regulatory process related to them plainly establish that there was no refusal to act in any case.

27   Smith Decl. ¶ 25.  Plaintiffs have not been deprived of access to CNN.com.  As discussed above,

28

30

DAVIS WRIGHT TREMAINE LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CA  94111-3611
(415) 276-6500
Fax: (415) 276-6599

Plaintiffs have the same access to CNN.com as everyone else, on the same basis as everyone else. Indeed, the primary content found on CNN.com is text accompanied by photographs, which are all fully accessible to persons with hearing disabilities. *See* Toppo Decl. ¶ 19.

Because Plaintiffs cannot show they were treated differently because of their disabilities or that they were targeted for disparate treatment, there is no violation of the Unruh Act and, as set forth in Section IV(G), below, CNN did not fail to accommodate under the ADA. *See Koebke*, 36 Cal. 4th at 854.

**G.     Plaintiffs Cannot Bring Their Claims Under Sections 51(f) and 54(c) of the Unruh Act or the CDPA.**

After the federal ADA passed, the California Legislature added Section 51(f) of the Unruh Act and Section 54(c) of the CDPA. These sections both state that a "violation of the right of any individual under the [ADA] shall also constitute a violation of this section." The ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation *by any person who owns, leases (or leases to), or operates a place of public accommodation*." 42 U.S.C. § 12182(a) (emphasis added). Under controlling Ninth Circuit authority, "places of public accommodation" under the ADA are limited to actual physical spaces. *See Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000).[16]

In *National Federation of the Blind v. Target Corp.*, this district considered whether the national retailer's website, www.Target.com, was a place of public accommodation under the ADA. 452 F. Supp. 2d 946 (N.D. Cal. 2006). The plaintiffs argued that the Target.com website

---

[16]  The addition of Section 51(f) to the Unruh Act created an ambiguity concerning whether *intentional* discrimination was still a required element of a claim under Section 51. The California Supreme Court resolved that ambiguity in *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661 (2009), holding that Section 51(f) was an exception to the still-valid requirement to establish intentional discrimination under the Unruh Act. Thus, a violation of the Act may be maintained where a plaintiff pleads "intentional discrimination in public accommodations in violation of the terms of the Act" *or* where a violation of the federal ADA has occurred. *Id*. at 698 (quoting *Harris*, 52 Cal. 3d at 1175).

DAVIS WRIGHT TREMAINE LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CA  94111-3611
(415) 276-6500
Fax: (415) 276-6599

offered some services and goods that were only available *in Target's brick and mortar stores, thus creating a nexus between the website and a physical place of public accommodation*.  Based on that nexus, the court ultimately found plaintiffs in that case had stated a claim under the ADA "to the extent that plaintiffs allege that the inaccessibility of Target.com *impedes the full and equal enjoyment of goods and services in Target stores*."  *Id.* at 956.  But it also held that, "[t]o the extent that Target.com offers information and services *unconnected to Target stores*, which do not affect the enjoyment of goods and services offered in Target stores, *the plaintiffs fail to state a claim* under Title III of the ADA."  *Id.* (emphasis added).

The plaintiff in *Young v. Facebook* made a similar argument and also failed to state a claim under the ADA.  The plaintiff alleged that, since Facebook gift cards are sold in stores across the country, there was a sufficient nexus to a physical place of public accommodation to require that Facebook make its website accessible.  But the court found that the nexus to the stores in *Young* was lacking because Facebook did not own or operate the stores and thus was not an entity or "person who owns, leases (or leases to) or operates a place of public accommodation," as required under Title III of the ADA.  As a result, Facebook was not a covered place of public accommodation under the ADA, and the plaintiff's claim failed.  *See id.*; 42 U.S.C. § 12182(a).

Like Facebook, CNN maintains no physical place of public accommodation in California in relation to the news videos it hosts on CNN.com.  Indeed, Plaintiffs can point to no content on CNN.com that provides a nexus to a place of public accommodation under the ADA.  Unlike Target.com, CNN.com does not offer goods and services that are available at a place of public accommodation only.  This situation more closely mirrors the *Young* case – CNN.com does not own, lease, or operate places of public accommodation that are linked to its news website.  Accordingly, because CNN.com is not a "place of public accommodation" subject to the ADA, there is no nexus between CNN.com and any such place of public accommodation and Plaintiffs cannot show a probability of prevailing under Section 51(f) of the Unruh Act or Section 54(c) of the CDPA.

GREATER LOS ANGELES AGENCY ON DEAFNESS, INC. v. TIME WARNER INC.
CASE NO. 4:11-CV-03458-LB – CNN'S SPECIAL MOTION TO STRIKE

DAVIS WRIGHT TREMAINE LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CA  94111-3611
(415) 276-6500
Fax: (415) 276-6599

## V.   CONCLUSION

The FCC is poised to announce federal regulations for video captioning online that CNN and the industry have anticipated for some time and are prepared to implement.  Plaintiffs impatiently and improperly ask this Court to impose – *on CNN.com alone* – a wholly untested and uncertain closed captioning standard (to be dictated by Plaintiffs), raising serious federal preemption and constitutional concerns that Plaintiffs simply cannot overcome.  Because Plaintiffs also cannot show a probability they will prevail on their claims under the Unruh Act or the CDPA, CNN respectfully requests that the Court grant its Special Motion to Strike.


DATED:  September 12, 2011

DAVIS WRIGHT TREMAINE LLP
THOMAS R. BURKE
JANET L. GRUMER


By: _____
                  /s/Thomas R. Burke
                  Thomas R. Burke

Attorneys for Defendant
CABLE NEWS NETWORK, INC.

DAVIS WRIGHT TREMAINE LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CA  94111-3611
(415) 276-6500
Fax: (415) 276-6599