DISABILITY RIGHTS ADVOCATES
LAURENCE W. PARADIS (CA BAR NO. 122336)
lparadis@dralegal.org
ANNA LEVINE (CA BAR NO. 227881)
alevine@dralegal.org
ELIZABETH LEONARD (CA BAR NO. 274757)
eleonard@dralegal.org
2001 Center Street, Fourth Floor
Berkeley, California 94704-1204
Tel: (510) 665-8644
Fax: (510) 665-8511
TTY: (510) 665-8716

GOLDSTEIN, DEMCHAK, BALLER, BORGEN & DARDARIAN
LINDA M. DARDARIAN (CA BAR NO. 131001)
ldardarian@gdblegal.com
JASON H. TARRICONE (CA BAR NO. 247506)
jtarricone@gdblegal.com
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
Tel: 510-763-9800
Fax: 510-835-1417

PETER BLANCK (*PRO HAC VICE*)
pblanck@syr.edu
900 S. Crouse Avenue
Crouse-Hinds Hall, Suite 300
Syracuse, New York. 13244-2130

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREATER LOS ANGELES AGENCY ON DEAFNESS, INC., DANIEL JACOB, EDWARD KELLY AND JENNIFER OLSON, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>TIME WARNER, INC., a Delaware Corporation,<br><br>    Defendant. | Case No. CV-11-3458 LB<br><br>Hearing<br>Date:        February 2, 2012<br>Time:        11:00 a.m.<br>Location:    Courtroom 4<br>Judge:       Magistrate Judge Laurel Beeler<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEFING IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE**<br><br>Action Filed:        June 15, 2011<br>Action Removed:    July 14, 2011 |

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 1

II.   THE LEGISLATIVE HISTORY FAILS TO SUPPORT CNN'S CLAIM THAT THE
      ANTI-SLAPP STATUTE APPLIES IN THIS SPECIFIC CONTEXT ............................ 1

      A.    The Legislative History Confirms that Determining the Gravamen of the Action Is
            Critical to Implementing the Legislature's Intent. .................................................... 2

      B.    CNN's Asserted Special Treatment of Media Defendants or the News Is Entirely
            Absent from the Legislative History ......................................................................... 4

III.  COURTS HAVE RECOGNIZED THAT APPLICATION OF THE ANTI-SLAPP
      STATUTE, WHILE BROAD, HAS LIMITS, AND MEDIA DEFENDANTS DO NOT
      GET A FREE PASS AS TO THE FIRST PRONG ........................................................... 5

      A.    Case Law Requires the Court to Engage in a Two-Prong Analysis That First
            Looks at the Substance of Plaintiffs' Legal Claims to Determine Whether the
            Conduct the Claims Target Is "in Furtherance of" Defendant's Free Speech
            Rights. ....................................................................................................................... 5

      B.    CNN's Motion Must Fail Because the Discriminatory Conduct Plaintiffs
            Challenge Is Not *Itself* "in Furtherance of" CNN's Protected News Reporting
            Activities. .................................................................................................................. 6

      C.    CNN's Branding of the Conduct Giving Rise to Plaintiffs' Suit as "in Furtherance
            of" Defendant's Free Speech Rights Relies on a Mischaracterization of Plaintiffs'
            Claims and Evidence ............................................................................................... 10

            1.    Providing Closed-Captioning Will Not Delay the Timing or Quality of
                  CNN's Online Video Content. ..................................................................... 11

IV.   THE NEW FCC REGULATIONS CONFIRM THAT DEFENDANT HAS NOT MET
      ITS BURDEN UNDER THE FIRST PRONG OF THE ANTI-SLAPP STATUTE AND
      THAT PLAINTIFFS CAN MEET THEIR BURDEN UNDER THE STATUTE'S
      SECOND PRONG ....................................................................................................... 13

      A.    The New FCC Regulations Confirm That Plaintiffs' Claims Do Not Burden or
            Arise out of Conduct in Furtherance of CNN's Speech Rights. ............................ 13

      B.    The January 13, 2012 FCC Regulations Confirm Plaintiffs' Probability of
            Prevailing on Their Claims. .................................................................................... 15

            1.    The Federal Communications Commission's New 21st Century CVAA
                  Regulations Do Not Preempt the Field of Closed Captioning of CNN's
                  Online Videos or Conflict with California Law. ......................................... 15

V.    CONCLUSION ............................................................................................................ 19

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' SUPPLEMENTAL BRIEFING IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE**
*Greater Los Angeles Agency on Deafness Inc, et al v. Time Warner Inc*, Case No. CV-11-3458 LB

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

# TABLE OF AUTHORITIES

## Cases

*Alexander v. A&E Television Networks, LLC*,
   2011 WL 3915981 (E.D. Cal. Sept. 6, 2011)........................................................ 7, 10

*All One God Faith, Inc. v. Organic and Sustainable Indus. Standards, Inc.*,
   183 Cal. App. 4th 1186 (2010) ...................................................................... 6, 7, 8

*Cf. Hilton v. Hallmark Cards*,
   599 F.3d 894 (9th Cir. 2010) .................................................................................. 10

*City of Cotati v. Cashman*,
   29 Cal. 4th 69 (2002) ............................................................................................... 5

*Club Members for an Honest Election v. Sierra Club*,
   45 Cal. 4th 309 (2008) ............................................................................................. 3

*Daghlian v. DeVry Univ., Inc.*,
   461 F. Supp. 2d 1121 (C.D. Cal. 2006) .................................................................. 14

*DFEH v. 1105 Alta Loma Road Apartments, LLC*,
   154 Cal. App. 4th 1273 (2007) ............................................................................ 8, 9

*Doe v. Gangland Prods., Inc.*,
   802 F. Supp. 2d 1116 (C.D. Cal. 2011) ................................................................ 6, 7

*Duncan v. Cohen*,
   No. C 08-2243 BZ, 2008 WL 2891065 (N.D. Cal. July 22, 2008).......................... 6

*Equilon Enterprises v. Consumer Cause, Inc.*,
   29 Cal. 4th 53 (2002) ..................................................................................... 3, 5, 6, 12

*Flatley v. Mauro*,
   39 Cal. 4th 299 (2006) ........................................................................................... 12

*Four Navy Seals v. Associate Press*,
   413 F. Supp. 2d 1136 (S.D. Cal. 2005)................................................................... 10

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
   505 U.S. 88 (1992)............................................................................................ 16, 18

*Gottfried v. FCC*,
   655 F.2d 297 (D.C. Cir. 1981) ............................................................................... 14

*Hylton v. Frank E. Rogozienski, Inc.*,
   177 Cal. App. 4th 1264  (2009) ................................................................................ 9

*Ingels v. Westwood One Broad. Servs., Inc.*
   129 Cal. App. 4th 1050 (2005) ............................................................................... 10

*Kearny v. Foley & Lardner LLP*,
   590 F.3d 638 (9th Cir. 2009) .................................................................................. 10

ii

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*Kolar v. Donahue, McIntosh & Hammerton*,
    145 Cal. App. 4th 1532 (2006) .................................................................. 9

*Kronmeyer v. IMDB, Inc.*,
    150 Cal. App. 4th 941 (2007) ............................................................. 10, 14

*Leiberman v. KCOP Television*,
    110 Cal. App. 4th 156 (2003) .................................................................. 10

*M.G. v. Time Warner, Inc.*,
    89 Cal. App. 4th 623 (2001) ............................................................... 9, 10

*Martin v. Inland Empire Util. Agency*,
    198 Cal. App. 4th 611 (2011) ................................................................... 9

*Mindys Cosmetics, Inc. v. Dakar*,
    611 F.3d 590 (9th Cir. 2010) .................................................................... 3

*MPAA v. FCC*,
    309 F.3d 796 (D.C. Cir. 2002) ................................................................ 14

*New.Net, Inc. v. Lavasoft*,
    356 F. Supp. 2d 1090 (C.D. Cal. 2004) ................................................... 12

*Ray v. Atlantic Richfield*,
    435 U.S. 151 (1978) ................................................................................ 17

*Santa Monica Rent Control Bd. v. Pearl Street*,
    109 Cal. App. 4th 1308 (2003) .................................................................. 9

*Sprietsma v. Mercury Marine*,
    537 U.S. 51 (2002) ............................................................................ 16, 17

*Stewart v. Rolling Stone LLC*,
    181 Cal. App. 4th 664 (2010) .................................................................. 10

*Taus v. Loftus*,
    40 Cal. 4th 683 (2007) ............................................................................ 10

*Terry v. Davis Cmty. Church*,
    131 Cal. App. 4th 1534 (2005) ................................................................ 10

*Tovar v. Midland Credit Mgmt.*,
    2011 WL 1431988 (S.D. Cal. 2011) ........................................................ 14

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*,
    190 F.3d 963 (9th Cir. 1999) .................................................................... 3

*Wisconsin Pub. Intervenor v. Mortier*,
    501 U.S. 597 (1991) ................................................................................ 18

**PLAINTIFFS' SUPPLEMENTAL BRIEFING IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE**
*Greater Los Angeles Agency on Deafness Inc, et al v. Time Warner Inc*, Case No. CV-11-3458 LB

1

**Statutes**

2   49 C.F.R. § 79.4(a)(1) ............................................................................................... 15

3   49 C.F.R. § 79.4(a)(2) ............................................................................................... 15

4   49 C.F.R. § 79.4(a)(12) ............................................................................................. 15

5   49 C.F.R. § 79.4(a)(13) ............................................................................................. 16

6   49 C.F.R. § 79.4(b) .................................................................................................... 15

7   49 C.F.R. § 79.4(c)(1)(i) ............................................................................................ 16

8   49 C.F.R. § 79.4(c)(2)(i) ............................................................................................ 16

9   Cal. Code Civ. Proc. § 425.16(b)(1) ...................................................................... 1, 5

10  Cal. Code Civ. Proc. § 425.16(e)(4) ........................................................................... 3

11  Cal. Code Civ. Proc. § 425.17 .................................................................................... 3

12

**Federal Rules of Evidence**

13  Fed. R. Evid. 201(b) ................................................................................................. 14

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

PLAINTIFFS' SUPPLEMENTAL BRIEFING IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE
*Greater Los Angeles Agency on Deafness Inc, et al v. Time Warner Inc*, Case No. CV-11-3458 LB

# I.   INTRODUCTION

There is no dispute that the anti-SLAPP statute is broadly construed, that CNN is in the business of speech, or that the news reports it offers at CNN.com are in connection with public issues.  This is largely the focus of CNN's supplemental brief, both the legislative history and the cases it cites, as it was the focus of CNN's original briefing and argument at hearing. In repeating these points, CNN evades as "unquestionabl[e]" the critical question: whether Plaintiffs' suit targets conduct "in furtherance of" Defendant's right of free speech or instead targets conduct – the failure to provide any form of closed captioning – that does not legitimately further free speech.  Defendant's Supplemental Brief (hereafter "Def.'s Supp. Br.") at 1.  Despite broad application, there are limits to the reach of the anti-SLAPP statute, as courts have recognized, and media defendants do not get a free pass to the second prong.  Plaintiffs' claims do not arise from conduct in furtherance of speech because the decision to exclude deaf people does not, and cannot, further CNN's speech rights.  New federal regulations promulgated by the FCC confirm this.  They require CNN to provide closed captioning with its broadcast news programs and certain online content without violating the First Amendment.  The new regulations further confirm that Plaintiffs can demonstrate a probability of prevailing under an analysis of the second prong of the anti-SLAPP statute.

# II.   THE LEGISLATIVE HISTORY FAILS TO SUPPORT CNN'S CLAIM THAT THE ANTI-SLAPP STATUTE APPLIES IN THIS SPECIFIC CONTEXT

Defendant presents new legislative history solely to reiterate a general argument it made at great length in its prior briefing and at hearing: that the reach of the anti-SLAPP statute is broad.  Neither Plaintiffs nor the cases on which they rely dispute this point.  The point does little to clarify whether CNN's failure and continued refusal to provide closed captioning is conduct "in furtherance of" CNN's right of free speech. *See* Cal. Civ. Proc. Code § 425.16(b)(1)(limiting scope of the anti-SLAPP statute to actions that target "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest").  Careful review of the anti-SLAPP statute's legislative history shows that the legislature wedded its intent to give the statute broad

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1

construction to an equally strong intent to apply it only to those cases that target conduct that furthers public participation rights, without any special protection for media defendants.

### A. The Legislative History Confirms that Determining the Gravamen of the Action Is Critical to Implementing the Legislature's Intent.

By focusing on the reach of the anti-SLAPP statute, CNN entirely overlooks its substantive purpose. In passing the 1997 amendments to the anti-SLAPP statute, the legislature intended to "encourage continued participation in matters of public significance and that this participation *should not be chilled through abuse of the judicial process.*" Suppl. Burke Decl., Ex. A at 37 (emphasis added). Defendant redacts critical language that explains why the statute is to be construed broadly. After plainly stating that the purpose of the original statute and amendments is to prevent "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the regress of grievances," the preamble states, "*To this end*, this section shall be construed broadly." *Id.* (emphasis added). By redacting "to this end" from the sentence, Defendant alters the preamble's meaning. Broad construction of the statute was inserted into the amendment's language to effectuate the statute's original purpose, not to expand the scope of its application without limits.

The Senate Judiciary Committee's report reinforces the point that the legislature had a particular kind of lawsuit in mind when passing the amendments. Stating that the "purpose of broad construction of statue is to better protect exercise of constitutional rights against meritless claims" the report explains that "while SLAPP suits 'masquerade as ordinary lawsuits' such as defamation and interference with prospective economic advantage, they are generally meritless suits brought primarily to chill the exercise of free speech or petition rights by the threat of severe economic sanctions against the defendant, and not to vindicate a legally cognizable right." *Id.* at 33 and 31. Echoing the words of the Senate Judiciary Committee, the Ninth Circuit has explained that "the hallmark of a SLAPP suit is that it lacks merit, and is brought with the goals of obtaining an economic advantage over a citizen party by increasing the cost of litigation to the point that the citizen party's case will be weakened or abandoned, and of deterring future litigation." *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 970-71

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

2

(9th Cir. 1999). Both the Ninth Circuit and the California Supreme Court have recognized that the aims of a SLAPP lawsuit – which justify the special, anti-SLAPP procedure – are to "interfere with and burden the defendant's exercise of his or her rights." *Equilon Enterprises v. Consumer Cause, Inc*., 29 Cal. 4th 53, 60 (2002); *see also Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010) ("California enacted the anti-SLAPP statute in response to the legislature's concern about civil actions aimed at private citizens to deter or punish them for exercising their political or legal rights.") (internal quotation marks omitted).

In pursuit of these broader goals, the legislature's immediate purpose in enacting the 1997 amendments was to respond to state court decisions interpreting two elements of the anti-SLAPP statute. First, the legislature wanted to clarify the breadth of conduct that qualifies as "speech" by adding "any other conduct" to the list of "written or oral statements" in the original statute. Suppl. Burke Decl., Ex. A at 42; Cal. Civ. Proc. Code § 425.16(e)(4). Second, the legislature sought to broaden the interpretation of what types of speech concern "an issue of public interest." Suppl. Burke Decl., Ex. A at 101. Neither of these elements is at issue in the present action. The parties agree that CNN engages in speech that is protected by the First Amendment and concerns public issues. The subject of the parties' disagreement is whether the targeted conduct—CNN's refusal to provide closed captioning—is conduct "in furtherance of" its protected speech activities. Insofar as the legislative history sheds any light on that discussion, it only confirms the importance of applying the "in furtherance" language in a manner consistent with the explicit legislative purpose to target cases "brought primarily to chill the exercise of free speech or petition rights."[1]

---

[1] It is also important to note that a few years after the legislature amended the statute to clarify its breadth, it again amended the statute "to curb the 'disturbing abuse' of the anti-SLAPP statute" and make it clear that certain cases brought solely in the public interest are not subject to the anti-SLAPP procedure. *Club Members for an Honest Election v. Sierra Club*, 45 Cal. 4th 309, 316 (2008) (citing Cal. Civ. Proc. Code § 425.17). This subsequent amendment again demonstrates that the legislature did not intend a limitless application of the first prong.

**PLAINTIFFS' SUPPLEMENTAL BRIEFING IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE**

*Greater Los Angeles Agency on Deafness Inc, et al v. Time Warner Inc*, Case No. CV-11-3458 LB

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**B.**   **CNN's Asserted Special Treatment of Media Defendants or the News Is Entirely Absent from the Legislative History.**

Notably, the legislative history lacks any mention of special treatment for the news media.  CNN argues the untenable position that the plain language in the anti-SLAPP statute requiring that targeted conduct be "in furtherance of" free speech rights requires no analysis when defendant is a media corporation, and that the anti-SLAPP statute instead gives media corporations a free pass to the second prong whenever the case involves speech in connection with a public issue. *See* Def.'s Supp. Br. at 15 (distinguishing cases holding that anti-SLAPP motion failed under the first prong on the basis that the cases "did not involve a news organization's free speech activities"); Decl. of Anna Levine in Support of Pls.' Supplemental Br. (hereafter "Levine Decl.," Ex. 1 (Rep.'s Tr. of Proceedings (Dec. 1, 2011)) at 19:3-9 (offering CNN's contention that "As a practical matter…how it works" and what is "basically the rule" is that any time the media is involved, the analysis automatically moves to prong two); 21:7-11 and 22:15-18 (ultimately answering the Court's query as to why a first prong exists at all, if the rule is that any time the media is involved the first prong is met, with the response that "[i]f the Court agrees that the speech involved is a matter of public interest and it is CNN's…it's the news so it is protected").  CNN has justified such an approach by reference to libel and privacy law cases. Levine Decl., Ex. 1 at 19:3-4, 10-15 ("I actually don't think there's anything wrong with that rule [that says "any time the media is involved, you are automatically at prong two"] because…the volume of libel and privacy cases…they go away now. And I can write a letter and they go away."). Libel and privacy law cases are consistent with the cases cited in the legislative history that were brought for the immediate purpose of chilling speech.[2]  These cases further reinforce that the central inquiry of the anti-SLAPP statute is the nature of the activity on

---

[2] *See* Suppl. Burke Decl., Ex. A at 7 (citing cases such as *Briggs v. Eden Council for Hope and Opportunity*, in which landlords sued a non-profit for defamation and infliction of emotional distress, targeting their conduct of providing tenants with information about non-discriminatory policies and *Kuzmich v. Mexican Political Association*, in which public school administrators and teachers sued parents and education advocates for defamation and infliction of emotional distress, targeting their conduct of participation in peaceful demonstrations on the public sidewalk outside the school).

**PLAINTIFFS' SUPPLEMENTAL BRIEFING IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE**
*Greater Los Angeles Agency on Deafness Inc, et al v. Time Warner Inc*, Case No. CV-11-3458 LB

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

which the plaintiff's claims are based, not the identity of the defendant or whether protected speech activities have occurred.

Shifting the burden to Plaintiffs under the first prong analysis CNN urges the Court to apply would place tremendous procedural burdens on individuals or classes of persons asserting hypothetical claims that the legislature never intended to target: an anti-discrimination action by African-American subscribers against a newspaper company that refuses to provide home delivery to them on the basis of race; an action against a cable company that breaks its subscriber agreement to provide certain channels, including news channels, in the cable packages purchased by subscribers; an action against an auditorium or speaker's series that refuses to install a ramp for audience members who use wheelchairs. Neither the plain language of the statute nor the legislative history support CNN's extreme position.

## III.   COURTS HAVE RECOGNIZED THAT APPLICATION OF THE ANTI-SLAPP STATUTE, WHILE BROAD, HAS LIMITS, AND MEDIA DEFENDANTS DO NOT GET A FREE PASS AS TO THE FIRST PRONG

Nor does the case law support CNN's analysis under the first prong. Neither state nor federal courts have authorized special procedures for media corporations pursuing anti-SLAPP motions. Rather, in all cases, courts follow a required, two-prong analysis that first carefully reviews an "arising from requirement [that] is not always easily met." *Equilon Enterprises*, 29 Cal. 4th at 66.

### A.   Case Law Requires the Court to Engage in a Two-Prong Analysis That First Looks at the Substance of Plaintiffs' Legal Claims to Determine Whether the Conduct the Claims Target Is "in Furtherance of" Defendant's Free Speech Rights.

The California Supreme Court has admonished that (1) the anti-SLAPP statute "requires the court to engage in a two-step process" that includes a first step in which the "moving defendant's burden is to demonstrate that the…acts of which plaintiff complains were taken 'in furtherance of the [defendant]'s right of…free speech," *id.* at 67 (citing Cal. Civ. Code Proc. § 425.16(b)(1)); and that (2) showing that plaintiff's action followed defendant's activities is not sufficient to demonstrate that it arose from an act in furtherance of those protected activities*, City of Cotati v. Cashman*, 29 Cal. 4th 69, 77 (2002) ("California courts rightly have rejected the

5

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   notion that a lawsuit is adequately shown to be one 'arising from' an act in furtherance of the

2   rights of petition or free speech as long as suit was brought after the defendant engaged in such

3   an act, whether or not the purported basis of the suit is that act itself.") (internal quotation marks

4   omitted). Rather, "the defendant's act underlying the plaintiff's cause of action must *itself* have

5   been an act in furtherance of the defendant's right of…free speech." *Id.* at 78; *see also Equilon*,

6   29 Cal. 4th at 66 (cross-referencing same principle by citation to *City of Cotati*).  In conflict with

7   the California Supreme Court's admonition, Defendant's reading of the statute would tie the

8   Court's hands, preventing it from engaging in the required two prong analysis, including analysis

9   of the act underlying the plaintiffs' cause of action, when the defendant bringing the motion is a

10  news corporation or when the targeted acts are connected in any way with speech. Binding state

11  law precedent prohibits this result.[3]

12          **B.**     **CNN's Motion Must Fail Because the Discriminatory Conduct Plaintiffs**

13  **Challenge Is Not *Itself* "in Furtherance of" CNN's Protected News Reporting Activities.**

14          As discussed in the original briefing and at hearing, *Doe v. Gangland Productions*,

15  *Duncan v. Cohen*, and *All One God Faith, Inc.* squarely and persuasively address how the Court

16  should proceed in a case such as this in which defendant's targeted conduct could not exist had it

17  not first engaged in prior, protected activities, but the targeted conduct does not *itself* further the

18  protected activities. *See* Pls.'s Opp. to Def.'s Special Mot. to Strike at 5-7 (discussing *Doe v.*

19  *Gangland Prods., Inc.*, 802 F. Supp. 2d 1116 (C.D. Cal. 2011); *Duncan v. Cohen*, No. C 08-2243

20  BZ, 2008 WL 2891065 (N.D. Cal. July 22, 2008); *All One God Faith, Inc. v. Organic and*

21  *Sustainable Indus. Standards, Inc.*, 183 Cal. App. 4th 1186 (2010)). Presumably because it

22  _____

23  [3] *Equilon* and *City of Cotati* were two of a trio of companion cases in which the California
    Supreme Court granted review, "in order to maximize the clarity and guidance respecting

24  application of the anti-SLAPP statute the full group of decisions may provide to bench and bar."
    *City of Cotati*, 29 Cal. 4th at 72 n.2. Defendant's analysis relies heavily on one of three, *Equilon*

25  *Enterprises*, in which the Court held that the anti-SLAPP statute applied, but as the Court in
    *Equilon Enterprises* explained, it is *City of Cotati*, in which the Court held that the anti-SLAPP

26  statute did *not* apply, which "discussed more fully" the relationship between a plaintiff's action
    and preceeding protected activity. *Equilon* at 29 Cal. 4th at 66. The Court cited this relationship,

27  requiring that conduct both "arise from" and be "in furtherance of" protected activity, as an
    example of how the anti-SLAPP statute places "express limitations on the availability and impact

28  of anti-SLAPP motions." *Id.*

6

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    cannot distinguish *Duncan* or *Doe*, CNN attempts instead to discredit this authority as the

2    product of federal trial courts, and simply "flawed" and "wrong." *See* Def.'s Supp. Br. at 15. Its

3    passing claim, however, that *Doe* "conflicts" with a later decision in favor of defendant with

4    respect to the same underlying show, "Gangland," is revealing. *See* Def.'s Supp. Br. at 15 n. 9

5    (claiming that *Alexander v. A&E Television Networks, LLC*, 2011 WL 3915981 (E.D. Cal. Sept.

6    6, 2011) "conflicts" with *Doe v. Gangland Productions*). It reveals the basic error of CNN's

7    analysis: CNN focuses on the identity of the defendant and the background subject matter, rather

8    than on the specific conduct targeted by the complaint. As in the present action, in *Doe*, there

9    was no question that defendant's broadcast was in "connection with a public issue or an issue of

10   public interest," and the court explicitly agreed that the anti-SLAPP statute should be "broadly

11   construed." *Doe*, 802 F. Supp. 2d at 1119. In both cases the "Gangland" show "lurk[ed] in the

12   background of Plaintiff's claims. But background activities are just that: background. They

13   define neither the 'principle thrust' of a film nor a claim for relief." *Id.* at 1122. In *Doe*, the

14   "principle thrust" of plaintiff's claim was that defendants broke a promise not to disclose his

15   identity, and thus "the core of plaintiff's claims [was] whether any statement by defendants

16   create a duty not to disclose plaintiff's identity and whether the Release affects any such duty."

17   *Id.* at 1121-22. In *Alexander*, plaintiff sued *because* defendant broadcast an episode that included

18   an image of him, not because defendant engaged in conduct which was distinct from and not in

19   furtherance of free speech such as a promise not to include plaintiff's image. *Alexander*, 2011

20   WL 3915981 at *1 ("Plaintiff's defamation claim…which is the sole claim…concerns

21   Defendant['s]…use of a photograph of Plaintiff in a television program called *Gangland*."). No

22   conflict exists between these results—only a distinction that results from applying the same

23   precedent to the differing substantive legal claims and facts of the different cases.

24        In *All One God Faith*, the California Court of Appeal held that while "*formulating* a

25   proposed industry 'organic' standard may constitute protected activity… *certification* of

26   products" with the proposed standard did not. *All One God Faith, Inc.*, 183 Cal. App. 4th at

27   1200.  Similarly, the protected nature of the generation of CNN's news videos and their

28

7

**PLAINTIFFS' SUPPLEMENTAL BRIEFING IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE**
*Greater Los Angeles Agency on Deafness Inc, et al v. Time Warner Inc*, Case No. CV-11-3458 LB

1   connection to a "public issue" are not in dispute, but the subsequent act of attaching the outcome

2   of those protected speech activities to an Internet platform whose mechanics of delivery exclude

3   deaf people is not conduct "in furtherance of" that protected speech. CNN attempts to distinguish

4   relevant precedents such as *All One God Faith* on the basis that the defendants were not media

5   corporations. Def.'s Supp. Br. at 15. This effort is unavailing in the absence of authority that the

6   identity of the defendant matters. *See supra* section II.B (noting lack of special treatment for

7   media defendants in plain language of statute or legislative history).[4]

8   Defendant further attempts to avoid the holding of *All One God Faith* by arguing that the

9   case goes off on its "own path." *See* Levine Decl. Ex. 1 at 29:11-12.[5]   The path has been well

10   trod, however, by other California courts that have concluded that discriminatory conduct such

11   as that Plaintiffs challenge here is not "in furtherance of" CNN' rights of petition or free speech.

12   In *DFEH v. 1105 Alta Loma Road Apartments, LLC*, 154 Cal. App. 4th 1273, 1288 (2007), the

13   Court of Appeal found a defendant landlord did not meet its burden on the first prong of the anti-

14   SLAPP statute because the plaintiff tenant's disability discrimination suit against the landlord

15   arose from defendant's decision not to provide an accommodation, not from defendant's filing of

16   eviction proceedings, *id.* at 1284 (noting that "the gravamen of DFEH's action against Alta

17   Loma was one for disability discrimination").  As the lower court in that case stated:  "'I just feel

18   like to rule for the defendant in this case would be to say that section 425.16 provides a safe

19   harbor for discriminatory conduct and I don't think that's what it's intended to do.'" *Id.* at 1288.

20   While the Court of Appeal found that defendant's filing of legal actions may be *evidence* of

21   disability discrimination, they were not the conduct targeted by the plaintiff. *Id.* at 1287.

22   Likewise, in the context of an employment discrimination case, the Court of Appeal held

23   that defendant failed to meet the requirements of the anti-SLAPP statute's first prong because the

24

25   [4] With respect to the case law, one might as fruitfully note that the plaintiffs in Defendant's cited cases were not deaf.

26
27   [5] The California Supreme Court apparently does not agree, as it denied a petition for review of the decision. *See All One God Faith, Inc.*, 183 Cal. App. 4th at 1186 (showing Review Denied on July 28, 2010).

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

8

**PLAINTIFFS' SUPPLEMENTAL BRIEFING IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE**
*Greater Los Angeles Agency on Deafness Inc, et al v. Time Warner Inc*, Case No. CV-11-3458 LB

1    "gravamen of plaintiff's action against defendants was one of racial and retaliatory

2    discrimination, not an attack . . . for their [protected] evaluations of plaintiff's performance as an

3    employee." *Martin v. Inland Empire Util. Agency*, 198 Cal. App. 4th 611, 624-25 (2011); *see

4    also Santa Monica Rent Control Bd. v. Pearl Street*, 109 Cal. App. 4th 1308, 1318 (2003)

5    (claims to compel compliance with a rent control ordinance were not based on defendant's

6    petitioning activities, even if those petitioning activities are what alerted plaintiffs to defendant's

7    violations).  In all of these cases, California appellate courts have relied on the Supreme Court's

8    admonition in *City of Cotati* that a suit is not based on protected activity merely because it

9    follows that activity, and have found that a defendant's decision to violate anti-discrimination or

10   other laws is not conduct in furtherance of speech.  *See*, *e.g.*, *1105 Alta Loma*, 154 Cal. App. 4th

11   at 1287-88.

12        Similarly, California courts have also found in the attorney malpractice context that even

13   if an attorney's alleged negligence occurs during the protected activity of filing a pleading, a

14   claim that the attorney did so in an incompetent manner does not target conduct in furtherance of

15   that protected activity.  *See, e.g.*, *Kolar v. Donahue, McIntosh & Hammerton*, 145 Cal. App. 4th

16   1532, 1539-40 (2006); *Hylton v. Frank E. Rogozienski, Inc.*, 177 Cal. App. 4th 1264, 1272

17   (2009) ("Although petitioning activity is part of the evidentiary landscape within which [the

18   plaintiff's] claims arose, the gravamen of [the] claims is that [the defendant] engaged in

19   nonpetitioning activity inconsistent with his fiduciary obligations owed to [the plaintiff] . . . .").

20   In these and other cases, courts have determined that protected activities lurk in the background,

21   but the action does not arise from acts "in furtherance" of those protected activities.

22        Contrary to *City of Cotati*, CNN argues that courts should take a broad view of

23   defendant's conduct and find that the first prong is satisfied whenever the conduct targeted by

24   plaintiff's claim is related in some way to protected activities.  Def.'s Supp. Br. at 10-11.  Yet in

25   half of the cases cited by CNN, the courts examine whether the general subject matter of the

26   speech involves matters of public interest, not whether the specific conduct targeted by the

27   lawsuit is "in furtherance of" the speech.  *See M.G. v. Time Warner, Inc.*, 89 Cal. App. 4th 623,

28
DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

9

**PLAINTIFFS' SUPPLEMENTAL BRIEFING IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE**

*Greater Los Angeles Agency on Deafness Inc, et al v. Time Warner Inc*, Case No. CV-11-3458 LB

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

629 (2001) (addressing "public issue" element of first prong); *Terry v. Davis Cmty. Church*, 131 Cal. App. 4th 1534, 1547-49 (2005) (same); *Four Navy Seals v. Associate Press*, 413 F. Supp. 2d 1136, 1149 (S.D. Cal. 2005) (same).  The other cases cited by CNN are also inapposite because the lawsuits targeted conduct that was *itself* in furtherance of speech or petition rights.  *See Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 679 (2010) (suit targeted "the acts of designing and publishing" an editorial feature); *Taus v. Loftus*, 40 Cal. 4th 683, 713 (2007) (suit "sought to impose liability . . . on the basis of" investigating, writing, publishing, and speaking about childhood memories of abuse); *Kearny v. Foley & Lardner LLP*, 590 F.3d 638, (9th Cir. 2009) (suit targeted actions that were part of the eminent domain proceeding).

## C.   CNN's Branding of the Conduct Giving Rise to Plaintiffs' Suit as "in Furtherance of" Defendant's Free Speech Rights Relies on a Mischaracterization of Plaintiffs' Claims and Evidence.

Unlike in the cases on which Defendant relies, Plaintiffs *have not* sued because CNN used or failed to use any particular language or image in its online news videos.  *Cf. Hilton v. Hallmark Cards*, 599 F.3d 894 (9th Cir. 2010) (suit by Paris Hilton over use of her image and catch-phrase); *Alexander* (discussed *supra* § III.B); *M.G.,* 89 Cal. App. 4th 623 (suit by children over publication of them in photograph with child molester); *Ingels v. Westwood One Broad. Servs., Inc.* 129 Cal. App. 4th 1050 (2005) (suit over alleged denial of inclusion as radio call-in commentator); *Kronmeyer v. IMDB, Inc.*, 150 Cal. App. 4th 941 (2007) (suit over exclusion from movie credits).  Nor have Plaintiffs sued because CNN investigated or taped the videos in any particular way, *cf. Leiberman v. KCOP Television*, 110 Cal. App. 4th 156 (2003) (suit over secret recordings used in investigative news report); or because CNN posted the online videos next to other material that affected the meaning of the images and language in them, *cf. Rolling Stone LLC*, 181 Cal. App. 4th 664 (suit over layout placing article about independent musicians next to tobacco advertisement).  Plaintiffs' suit arises out of CNN's refusal to provide closed captioning for its online video clips or material original to CNN.com, as it does for its television broadcasts and as it has agreed it will do for other online content under the new FCC regulations. Unlike in Defendant's cited cases, closed captioning is not part of the investigation, creation, or even

**PLAINTIFFS' SUPPLEMENTAL BRIEFING IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE**
*Greater Los Angeles Agency on Deafness Inc, et al v. Time Warner Inc*, Case No. CV-11-3458 LB

1    publication of a news story – it can occur after publication. *See* Decl. of Kevin Erler in Support

2    of Pls.' Opp. to Def.'s Special Mot. to Strike ("Erler Decl.") ¶¶ 11 (explaining that caption files

3    do not affect media content and can be added after the video is already online), 5, 37-40

4    (explaining closed captioning process). Plaintiffs' only specification regarding the steps

5    Defendant should take to provide closed captioning are that the steps should ensure that the

6    benefits and advantages offered by CNN.com are "fully and equally enjoyable to persons who

7    are deaf or have hearing loss." Complaint ¶ 65. Plaintiffs have provided evidence that a wide

8    variety of technical mechanisms for delivery are available that Defendants could use to provide

9    closed captioning. Erler Decl. ¶¶ 7, 23, 25, 26.

10           1.      **Providing Closed-Captioning Will Not Delay the Timing or Quality of CNN's Online Video Content.**

12           At times CNN appears to acknowledge that a closed captioning requirement does not, per

13   se, affect its First Amendment protected activities. *See* Levine Decl. Ex. 1 at 23 ("We don't

14   care…in the general sense of having to have a closed captioning requirement."); *see also* Def.'s

15   Special Mot. to Strike at 1 ("[C]NN technical personnel are prepared to implement online

16   captioning technology for CNN.com as promptly as possible after the [January 13, 2012]

     regulations issue."). At other times, CNN expends an enormous effort on an argument that

17   equally applies to any Internet closed captioning requirement, whether state, or federal: that

18   Internet closed captioning would introduce "errors and resulting inaccuracies" into its speech,

19   Def.'s Mot. to Strike at 22; *see also* Def.'s Suppl. Br. at 2; and that closed captioning would lead

20   to delay and "likely lead to CNN.com posting fewer news videos," Def.'s Suppl. Br. at 14; *see*

21   *also* Def.'s Mot. To Strike at 23. Plaintiffs' evidence demonstrates that available technology

22   allows CNN to provide closed-captioning without affecting the timing or quality of its online

23   video content. Technology provides closed captions that are as or more reliable transcriptions as

24   those for broadcast television; can be posted after and separately, allowing the original video to

25   be posted immediately; and can be provided at any speed required. Erler Decl. at ¶¶ 11, 18, 37,

26   39, 42. Viewers do not even have to see closed captioning if they prefer not to. *Id.* ¶ 10. CNN

27   argues that Plaintiffs seek to compel them to speak using captioning technology that is

28                                                   11

**PLAINTIFFS' SUPPLEMENTAL BRIEFING IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE**
*Greater Los Angeles Agency on Deafness Inc, et al v. Time Warner Inc*, Case No. CV-11-3458 LB

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   inconsistent with its editorial standards. *See, e.g.,* Def.'s Suppl. Br. at 17. However, Plaintiffs

2   have not demanded the use of any particular captioning technology so long as CNN provides full

3   and equal access, and CNN has not articulated why captioning technology fails to meet its

4   "editorial standards," or even what those standards are.

5          The parties' factual dispute regarding the mechanics and quality of closed captioning

6   serves to demonstrate why the Court should deny Defendant's motion. CNN asks the Court to

7   presume numerous facts to support its claim that closed-captioning affects CNN's production of

8   online content, yet these are disputed facts. *See*, *e.g.*, Erler Decl. at 11, 18, 20, 34, 43 (explaining

9   that closed captioning not affect media content; can offer captioning of even better quality than

10  can be offered for broadcast formats; can increase revenues; could be added to the videos

11  currently on CNN.com efficiently and with relatively little expense; and, is entirely feasible

12  today). The anti-SLAPP statute—by design—imposes significant procedural constraints on the

13  parties' ability to address such factual disputes, including a short time frame for anti-SLAPP

14  filings and hearings, and a provision for a stay of discovery. *Equilon Enterprises*, 29 Cal. 4th at

15  65 ("Early resolution is consistent with the statutory design 'to prevent SLAPPs by ending them

16  early and without great cost to the SLAPP target'… a purpose reflected in the statute's short time

17  frame for anti-SLAPP filing and hearings . . . and provision for a stay of discovery.") Therefore,

18  the evidentiary burden on the non-moving plaintiff is "much like that used in determining a

19  motion for nonsuit, directed verdict, or summary judgment." *New.Net, Inc. v. Lavasoft*, 356 F.

20  Supp. 2d 1090, 1099 (C.D. Cal. 2004)(internal citations omitted). The Court must "accept as true

21  the evidence favorable to the plaintiff…and evaluate the defendant's evidence only to determine

22  if it has defeated that submitted by the plaintiff as a matter of law." *Flatley v. Mauro*, 39 Cal. 4th

23  299, 326 (2006).  Defendant's insistence that providing Internet closed captioning would "delay

24  CNN's news delivery and put it at a competitive disadvantage," Def.'s Suppl. Br. at 14, and that

25  such captioning would "not meet [CNN's] editorial standards," *id.* at 17, cannot survive an

26  analysis that accepts as true the evidence favorable to the plaintiff.

27

28
                                                     12

**IV.     THE NEW FCC REGULATIONS CONFIRM THAT DEFENDANT HAS NOT
MET ITS BURDEN UNDER THE FIRST PRONG OF THE ANTI-SLAPP
STATUTE AND THAT PLAINTIFFS CAN MEET THEIR BURDEN UNDER
THE STATUTE'S SECOND PRONG**

The FCC's new regulations for online closed captioning for full-length video
programming previously broadcast on television with closed captioning confirm that closed
captioning does not implicate the First Amendment and as a result CNN's refusal to provide
close captioning does not further its free speech rights. The new regulations also confirm that
Plaintiffs' have a probability of prevailing under the second prong of the anti-SLAPP statute.

**A.     The New FCC Regulations Confirm That Plaintiffs' Claims Do Not Burden
or Arise out of Conduct in Furtherance of CNN's Speech Rights.**

CNN's argument that its conduct in refusing to provide captioning is protected activity,
and that Plaintiffs' claims therefore target conduct "arising from" and "in furtherance" of the
First Amendment, rises and falls on whether the specific activity of refusing to provide closed
captioning is in fact an "editorial decision" that implicates the First Amendment. No one has
questioned that the news is subject to First Amendment protection. The question is whether the
choice not to provide Internet accessibility features that allow deaf visitors to CNN.com to
access the news online is, as Defendant contends, an exercise of editorial discretion subject to
First Amendment protection.  Yet the FCC's new regulations, existing case law cited in the new
regulations, and CNN's asserted intention to comply with federal closed captioning
requirements, all confirm that even insofar as closed-captioning requirements impose incidental
costs and burdens, those difficulties do not implicate the First Amendment.

As Plaintiffs noted in their original briefing, courts have consistently held that closed
captioning of broadcast television does not implicate the First Amendment. Opp. at 28-29. CNN
ignored this squarely relevant authority in its original and supplemental briefing, and at hearing
on its motion. *See* Levine Decl. Ex. 1 at 45 (employing an analogy to video description to argue
that closed captioning changes content and refusing to acknowledge the existence of authority to
the contrary).  In addition, Defendant complained to the FCC that requiring closed captioning
"would raise serious First Amendment questions." Time Warner Reply at 4-5, available at

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

13

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

http://fjallfoss.fcc.gov/ecfs/document/view?id=7021744367.[6]  The FCC flatly rejected

Defendant's arguments, noting in its report accompanying the new regulations that—as in

broadcast television—requiring closed captions on the Internet does not implicate the First

Amendment:

> As an initial matter, *closed captioning requirements implicate the First
> Amendment only marginally at best.*  The D.C. Circuit has rejected the argument
> that captioning requirements regulate program content in violation of protected
> rights under the First Amendment, finding that closed captioning "would not
> significantly interfere with program content."[7]  Indeed, because closed captioning
> involves a "precise repetition of the spoken words" communicated by the speaker,
> any First Amendment burden is only incidental.[8]  The D.C. Circuit's explanation
> that closed captioning is a "precise repetition" is consistent with our definition of
> closed captioning as the visual display of the audio portion of video
> programming.

Levine Decl., Ex. 2 at 18 and Levine Decl., Ex. 3 at 4-5.  The January 13, 2012 regulations

confirm that the decision not to provide closed captioning is not a protected First Amendment

activity. As a result, both Defendant's affirmative First Amendment defense, and its argument

that Plaintiffs' claims requiring closed captioning target conduct "in furtherance of" this

allegedly protected First Amendment activity must fail.

*//*

*//*

*//*

---

[6] Plaintiffs request judicial notice of this information under Fed. R. Evid. 201(b) as a public
record that is capable of accurate and ready determination by resort to sources whose accuracy
cannot reasonably be questioned. *See Tovar v. Midland Credit Mgmt.*, 2011 WL 1431988 (S.D.
Cal. 2011) at *1-*2 (taking judicial notice of comments and letters to the FCC regarding
proposed regulations). Official websites are similarly recognized as appropriate for judicial
notice under Fed. R. Evid. 201(b). *Daghlian v. DeVry Univ., Inc.*, 461 F. Supp. 2d 1121, 1143,
1145 (C.D. Cal. 2006).
[7] *Gottfried v. FCC,* 655 F.2d 297, 311 n.54 (D.C. Cir. 1981), *rev'd in part,* 459 U.S. 498 (1983)
(Supreme Court did not disturb dictum of D.C. Circuit suggesting the constitutionality of closed
captioning regulations); *see also MPAA v. FCC,* 309 F.3d 796, 803 (D.C. Cir. 2002).  For this
reason, CNN's reliance on *Kronemyer*, 150 Cal. App. 4th at 947, is misplaced.  Unlike
compelling specific content on a website, these cases demonstrate that compelling closed
captioning does not implicate the First Amendment.
[8] *MPAA v. FCC,* 309 F.3d 796, 803 (D.C. Cir. 2002) (noting a key difference for First
Amendment purposes between video description (which regulates video content) and closed
captioning (which involves a precise repetition of the spoken words)).

14

**PLAINTIFFS' SUPPLEMENTAL BRIEFING IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION
TO STRIKE**

*Greater Los Angeles Agency on Deafness Inc, et al v. Time Warner Inc*, Case No. CV-11-3458 LB

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**B.**   **The January 13, 2012 FCC Regulations Confirm Plaintiffs' Probability of Prevailing on Their Claims.**

      **1.**   **The Federal Communications Commission's New 21st Century CVAA Regulations Do Not Preempt the Field of Closed Captioning of CNN's Online Videos or Conflict with California Law.**

The FCC's newly issued CVAA regulations do not "occupy the field" of closed captioning of the videos on CNN.com and thus Plaintiffs' state law claims for discrimination against CNN for its refusal to caption the videos on CNN.com are not field preempted by the newly published CVAA regulations.[9]  Like the CVAA itself, the CVAA regulations have a very narrow focus.  Issued on January 13, 2012, the regulations apply only to "full-length video programming delivered using Internet protocol" that "is published or exhibited on television in the United States with captions on or after the following dates:  (1) [date six months after Federal Register publication], for all prerecorded programming that is not edited for Internet distribution, … (2) [date 12 months after Federal Register publication], for all live and near-live programming, … (3) [insert date 18 months after Federal Register publication], for all prerecorded programming that is edited for Internet distribution, unless it is subject to paragraph (b)(4) below."  49 C.F.R. § 79.4(b), attached as Appendix B to Levine Ex. 2, at 81-90.  The regulations define "full-length video programming"[10] as "video programming that appears on television and is distributed to end users, substantially in its entirety, via Internet protocol, *excluding video clips or outtakes*."  49 C.F.R. § 79.4(a)(2) (emphasis added).  "Video clips" are "excerpts of full-length video programming."  49 C.F.R. § 79.4(a)(12).  Outtakes are "content that is not used in an edited version of video programming shown on television."  49 C.F.R. §

---

[9] Plaintiffs' Opposition to Defendant's Special Motion to Strike (Dkt. 22), filed on November 3, 2011 addresses the scope of the CVAA.  This supplemental argument is limited to the scope of the FCC's new CVAA regulations that issued on January 13, 2012 and take effect upon publication in the Federal Register. The new regulations are filed herewith as Levine Decl. Ex. 2 (*In the Matter of Closed Captioning of Internet Protocol-Delivered Video Programming: Implementation of the Twenty-First Century Communications and Video Accessibility Act of 2010*, MB Docket No. 11-154, Report & Order, January 13, 2012.)

[10] "Video programming" is defined as "programming provided by, or generally considered comparable to programming provided by, a television broadcast station, but not including consumer-generated media."  49 C.F.R. § 79.4(a)(1).

**PLAINTIFFS' SUPPLEMENTAL BRIEFING IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE**
*Greater Los Angeles Agency on Deafness Inc, et al v. Time Warner Inc*, Case No. CV-11-3458 LB

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

79.4(a)(13).  Thus, the regulations do not cover video clips, outtakes, IP-delivered video content that has aired on television only in another country, content that has not originally appeared on television with closed captions, and content posted before the deadlines set by the regulations.[11] In other words, neither the CVAA nor its implementing regulations "pervasively" regulate the video content on CNN.com.  *See Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (field preemption exists where the scheme of federal regulations is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it).  They therefore do not field preempt Plaintiffs' state law claims.

CNN will likely argue that the fact that the FCC has chosen to not regulate video clips or other video content on CNN.com indicates an intent to occupy the field.  But preemption does not work that way.  Given that field preemption arises with *pervasive* federal regulation of the specific area covered by the claim at issue, field preemption cannot also arise out of the *absence* of federal regulation or all state laws would be preempted.  As the U.S. Supreme Court has explained, "[i]t is quite wrong" to view an agency's "decision not to adopt a regulation" "as the functional equivalent of a regulation prohibiting all States and their political subdivisions from adopting such a regulation."  *Sprietsma v. Mercury Marine*, 537 U.S. 51, 65 (2002).  Inaction will only imply an intent to preempt if there is an authoritative statement from Congress or the relevant agency that "takes on the character of a ruling that no regulation by the federal government or the states is appropriate."  *Id.* at 67.  No such statement has come from Congress or the FCC.  To the contrary, Congress has declared its intent that video programming providers increase the accessibility of video programming delivered via Internet protocol to individuals

---

[11] In terms of standards, the regulations require that the closed captions for covered video content delivered through Internet protocol be of "at least the same quality as the television captions provided for the same programming" and provide that the Society of Motion Picture and Television Engineers Timed Text format (SMPTE ST 2052-1:2010: "Timed Text Format (SMPTE-TT)" 2010) is an acceptable format that meets this obligation.  49 C.F.R. § 79.4(c)(1)(i), (2)(i).  However, the regulations also allow video programming owners and distributors to "agree upon an alternative technical format for the delivery of captions" to the distributor.  49 C.F.R. § 79.4(c)(1)(i).  In evaluating whether captions are of the same quality, factors to consider include "completeness, placement, accuracy, and timing."  Levine Decl. Ex. 2 ¶ 37, p. 26.

16

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   who are deaf or hard of hearing.  Senate Committee Report at 1; House Committee Report at 19.

2   Additionally, even though its new regulations do not expressly require captioning of video clips,

3   the FCC "encourage[s] Video Programming Owners and Video Programming Distributors to

4   provide closed captions for IP-delivered video clips where they are able to do so."  Levine Decl.

5   Ex. 2 ¶ 46, p. 31.  Moreover, according to the FCC, "it is particularly important that news

6   content, which plays the vital role of ensuring an informed citizenry, be made accessible to all

7   citizens.…We therefore encourage the industry to make captions available on all TV news

8   programming that is made available online, even if it is made available through the use of video

9   clips as defined above."  *Id.* ¶ 48, p. 32.  Congress and the FCC clearly want CNN and other

10  video content providers to caption the video clips on their websites.  The fact that federal law

11  does not presently require it does not mean that CNN has a free pass to deny Plaintiffs and other

12  consumers who are deaf or hard of hearing access to critical news information simply because

13  CNN has chosen to present that information in the form of video clips on its website.  Instead,

14  Congress' and the FCC's decision to take no action regarding captioning of video clips at this

15  time "leaves the law [] exactly as it had been.  The decision to not regulate is fully consistent

16  with an intent to preserve state regulatory authority pending adoption of specific federal

17  standards."  *Sprietsma*, 537 U.S. at 65.

18          Additionally, the FCC states that it may in the future regulate video clips in order "to

19  ensure that our rules meet Congress's intent to bring captioning access to individuals viewing IP-

20  delivered programming."  Levine Decl. Ex. 2 ¶ 48, p. 32.  This statement has no implied

21  preemptive effect on state law.  As the Supreme Court has explained, "it may be that rules will

22  be forthcoming that will preempt the State's present [] rule, but until that occurs, the State's

23  requirement need not give way under the Supremacy Clause."  *Ray v. Atlantic Richfield*, 435

24  U.S. 151, 172 (1978).  As such, Congress and the FCC have left vacant the field of captions for

25  online video clips, leaving California "ample room" "to supplement federal efforts."  *Wisconsin*

26

27

28

**PLAINTIFFS' SUPPLEMENTAL BRIEFING IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE**

*Greater Los Angeles Agency on Deafness Inc, et al v. Time Warner Inc*, Case No. CV-11-3458 LB

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  *Pub. Intervenor v. Mortier*, 501 U.S. 597, 613–14 (1991).[12]  Thus, the Unruh Act and DPA are

2  not impliedly preempted, and CNN cannot ignore California law's requirement that CNN

3  provide access to Californians who are deaf or hard of hearing to the video clips, and other video

4  content, on CNN.com.

5          Similarly, Plaintiffs' Unruh Act and Disabled Persons Act claims do not conflict with the

6  CVAA regulations.  As set forth in Plaintiffs' Opposition to Defendant's Special Motion to

7  Strike (Dkt. 22) at 18-21 as well as above, CNN can comply with both the CVAA and Unruh and

8  the DPA.  Additionally, the Unruh Act and DPA, do not prescribe any particular standards for

9  making videos accessible to people who are deaf or hard of hearing.  They are therefore not in

10  conflict with the FCC's regulations for the CVAA, which impose a performance standard

11  requiring applicable video programming delivered over the Internet to have closed captions that

12  are "of at least the same quality" as the captions presented when the program is broadcast on

13  television, and authorize use of SMPTE-TT as a safe harbor standard.  Furthermore, the Court

14  has discretion under California law to determine the most appropriate schedule for captioning the

15  videos on CNN.com.  The CVAA only sets deadlines for captioning of full television programs

16  that are broadcast with captions after the effective date of the regulations.  And, even for those

17  programs, the FCC "encourage[s] Video Programming Owners and Video Programming

18  Distributors to make captioned programming available in advance of the applicable deadlines, to

19  the extent they are able to do so."  Levine Decl. Ex. 2 ¶ 52, p. 34.  This Court could find that

20  CNN is able to meet earlier deadlines, and that finding would be wholly consistent with FCC

21  intent.  As such, compliance with the CVAA, the implementing regulations, and California law is

22  not "a physical impossibility," and state law does not "stand as an obstacle to the

23  accomplishment and execution of the full purposes and objectives of Congress."  *Gade*, 505 U.S.

24  at 98.  As such, Plaintiffs' claims are not conflict preempted.

25

26  ────────────────
   [12] The savings clauses in the 1996 Telecommunications Act and the 1934 Federal
   Communications Act further make clear that those Acts and the amendments thereto (such as the

27  CVAA) do not impliedly preempt state law.  *See* Plaintiffs' Opposition to Defendant's Special
   Motion to Strike (Dkt. 22) at 16-18.

28                                                      18
   ─────────────────────────────────────────────────────
   **PLAINTIFFS' SUPPLEMENTAL BRIEFING IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION
   TO STRIKE**
   *Greater Los Angeles Agency on Deafness Inc, et al v. Time Warner Inc*, Case No. CV-11-3458 LB

V.     **CONCLUSION**

        For all of the foregoing reasons, the Court should deny Defendant's Special Motion to Strike.


Dated: January 23, 2012                         DISABILITY RIGHTS ADVOCATES

                                        By:      _/s/  Laurence W. Paradis_____
                                                LAURENCE W. PARADIS
                                                ANNA LEVINE
                                                ELIZABETH LEONARD

                                                GOLDSTEIN, DEMCHAK, BALLER,
                                                BORGEN & DARDARIAN
                                                LINDA M. DARDARIAN
                                                JASON H. TARRICONE

                                                PETER BLANCK (*pro hac vice*)

                                                Attorneys for Plaintiffs.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**PLAINTIFFS' SUPPLEMENTAL BRIEFING IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE**
*Greater Los Angeles Agency on Deafness Inc, et al v. Time Warner Inc*, Case No. CV-11-3458 LB