UNITED STATES DISTRICT COURT

Northern District of California

Oakland Division

| | |
|---|---|
| GREATER LA AGENCY ON DEAFNESS, *et al.*<br><br>                    Plaintiffs,<br>     v.<br><br>CABLE NEWS NETWORK, INC.,<br><br>                    Defendant.<br>_____/ | No. C 11-03458 LB<br><br>**ORDER DENYING DEFENDANT'S MOTION TO STRIKE**<br><br>[ECF No. 13] |

## I. INTRODUCTION

Plaintiffs Greater Los Angeles Agency on Deafness, *et al.*, allege that Defendant Cable News Network, Inc. ("CNN")[1] violated the Unruh Civil Rights Act, Cal. Civ. Code §§ 51, *et seq.*, and the California Disabled Persons Act, Cal. Civ. Code §§ 54, *et seq.*, because it failed to include captions on videos posted on its website CNN.com, which therefore were inaccessible to the more than 100,000 people who are deaf or hard of hearing in California. Complaint, Exh. A to Notice of Removal, ECF No. 1 at 13.[2] CNN moves to strike Plaintiffs' claims pursuant to section 425.16 of the California Code of Civil Procedure, arguing that both claims arise from its news-gathering

---

[1] The parties stipulated that CNN shall be substituted for Defendant Time Warner, Inc. Stipulation, ECF No. 28 at 2.

[2] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the pages at the bottom.

activities and dissemination of news concerning matters of substantial public interest and that Plaintiffs cannot establish a probability that they will prevail on their claims. Motion, ECF No. 13 at 2. The court held two hearings and considered supplemental briefing at CNN's request. The court denies CNN's motion to strike on the ground that CNN's decision not to caption its already-generated videos is not an act in furtherance of its First Amendment rights.

## II. LEGAL STANDARD

Section 425.16 of the California Code of Civil Procedure is called the anti-SLAPP statute because it allows a defendant to gain early dismissal of causes of action that are designed primarily to chill the exercise of First Amendment rights. *See Siam v. Kizilbash*, 130 Cal. App. 4th 1563, 1568 (Cal. Ct. App. 2005). The statute provides

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that there is a probability that the plaintiff will prevail on the claim.

Cal. Code Civ. P. § 425.16(b)(1)

Acts "in furtherance of" these rights include:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

*Id.* at § 425.16(e).

California's anti-SLAPP statute applies to state claims in federal court. *See Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1206-07 (9th Cir. 2005). In ruling on an anti-SLAPP motion, the trial court engages in a two-step process. *See Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (Cal. 2002). First, the court decides whether the defendant has made a threshold showing that the challenged cause of action arises from acts in furtherance of the defendant's right of petition or free speech under the United States or California constitutions in connection with a public issue. *Id.* "If the court finds such a showing has been made, it then determines whether the plaintiff has

demonstrated a probability of prevailing on the claim." *Id.* The claim is subject to dismissal only when the defendant shows that the claim is based on protected conduct and the plaintiff fails to show a probability of success on that claim. *See Navellier v. Sletten*, 29 Cal. 4th 82, 88-89 (Cal. 2002).

A defendant needs only to make a prima facie showing that the claim "arises from" its conduct "in furtherance of" its exercise of free speech or petition rights as defined in section 425.16(e) of the California Code of Civil Procedure. *See Equilon*, 29 Cal. 4th at 61. The burden then shifts to the plaintiff to establish as a matter of law that no such protection exists. *See Governor Gray Davis Committee v. American Taxpayers Alliance*, 102 Cal. App. 4th 449, 456 (Cal. Ct. App. 2002). To establish a probability of prevailing, a plaintiff must demonstrate that the complaint is legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited. *See Premier Med. Mgmt. Systems, Inc. v. California Ins. Guar. Ass'n*, 136 Cal. App. 4th 464, 476 (Cal. Ct. App. 2006). The plaintiff also must present evidence to overcome any privilege or defense to the claim that has been raised. *See Flatley v. Mauro*, 39 Cal. 4th 299, 323 (Cal. 2006).

If the court grants an anti-SLAPP motion, a defendant may recover fees and costs. Cal. Code Civil P. § 425.169(c); *see Verizon Delaware v. Covad Comms.*, 377 F.3d 1081, 1091 (9th Cir. 2004).

### III. DISCUSSION

CNN asserts that its captioning of news videos on CNN.com is protected under section 425.16(e)(4) as "other conduct in furtherance of . . . the constitutional right of free speech in connection with a public issue or an issue of public interest." *See* Motion to Strike, ECF No. 13 at 15.[3] Plaintiffs do not dispute that CNN is in the business of speech or that its news videos are in connection with public issues or issues of public interest. Plaintiffs' Supplemental Brief, ECF No. 41 at 6. The parties disagree only about whether CNN's refusal to provide captioning is an act in furtherance of its protected speech rights that satisfies the first prong of the anti-SLAPP test and shifts the burden to Plaintiffs to show a probability of prevailing on their claims.

CNN's arguments are as follows: (A) under a broad construction of the anti-SLAPP statute, all

---

[3] CNN does not argue that its underlying conduct meets any other criteria in section 425.16(e)(1-3).

C 11-03458 LB
ORDER DENYING MOTION TO STRIKE  3

1  of its activities as a news media organization are in furtherance of its free speech rights and (B) even
2  considering only its decision not to provide closed captioning, that decision is an act in furtherance
3  of free speech because (1) the decision cannot be divorced from the broadcasted speech and (2) the
4  closed-captioning technology results in errors, and CNN's decision not to use the technology is an
5  exercise of editorial discretion that is conduct in furtherance of its rights of free speech. Defendant's
6  Supplemental Brief, ECF No. 40 at 9-23.  In opposition, Plaintiffs contend that (A) the statute does
7  not exempt media defendants from the first prong and (B) providing closed captioning does not
8  delay the timing or quality of CNN's online video content.  Plaintiffs' Supplemental Brief, ECF No.
9  41 at 10-17.

10 The two issues thus are whether CNN has established (A) whether all its business activities are
11 acts in furtherance of its free speech rights and, if not, (B) whether its decision not to caption is
12 conduct in furtherance of its free speech rights.

### A. Whether All of CNN's Activities Are Acts in Furtherance of Its Free Speech Rights

#### 1. CNN's Arguments

CNN argues that state and federal courts construe the anti-SLAPP statute broadly to reach conduct beyond the actual exercise of free speech.  Defendant's Supplemental Brief, ECF No. 40 at 9-16.  For this proposition, CNN relies in part on the Ninth Circuit's observation that "the courts of California have interpreted this piece of the defendant's threshold showing rather loosely." *Id.* at 11 (*quoting Hilton v. Hallmark Cards*, 599 F.3d 894, 904 (9th Cir. 2010).  CNN also suggests that Plaintiffs seek to impose an impermissible requirement that a cause of action must have an actual chilling effect on a defendant's exercise of free speech.  *Id.* at 13.  CNN then argues that the legislative intent of the statute requires that it be read broadly to include non-communicative conduct.  *Id.* at 13-16.

Boiled down, CNN's argument is that because the court must construe the anti-SLAPP statute broadly, reading the first prong of the anti-SLAPP test as having *any* limits (at least as applied to a news media organization) would construe the statute in an impermissibly narrow manner.

#### 2. Plaintiffs' Arguments

Plaintiffs do not dispute that courts must construe the anti-SLAPP statute broadly but contend

that the broad construction is to effect the statute's purpose. Plaintiffs' Supplemental Brief, ECF No. 41 at 6-7. In support of their argument, Plaintiffs quote the statute's purpose:

> The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the regress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly.

*Id.* at 7 (quoting Cal. Civ. Proc. Code § 425.16(a)). Plaintiffs observe that CNN redacted this preamble to emphasize only "construe broadly," but the full quotation reveals that to "construe broadly" means to effect the statute's purpose, not create a rule without limits. *Id.*

Plaintiffs agree that CNN's use of the anti-SLAPP statute in libel and privacy law cases is consistent with the statute's goal of discouraging cases brought to chill speech. *Id.* at 9. But Plaintiffs assert that nothing in the legislative history or state or federal case law exempts media corporations from making the threshold showing that a plaintiff's cause of action arises from the media corporation's conduct in furtherance of free speech. *Id.* at 8-11. Plaintiffs argue that accepting CNN's reading of the statute would contradict the statute by effectively removing the first prong – which requires the court to determine whether the defendant's act that underlies a plaintiff's claim is in furtherance of the defendant's free speech rights – whenever the defendant is a news corporation or when the defendant's acts are in any way connected to speech. *Id.* at 11. Plaintiffs also contend that CNN's interpretation shifts a significant procedural burden to plaintiffs asserting claims that the legislature never intended to target with the statute such as an anti-discrimination suit by African-American subscribers against a newspaper company that refuses to provide home delivery to them on the basis of their race or a speaker's series that refuses to install a ramp for audience members who use wheelchairs. *Id.* at 10.

**3. Analysis**

CNN's position is that all of its business activities are in furtherance of its broadcast speech and that therefore it – and all media defendants – are entitled to move to the anti-SLAPP statute's second prong without any further showing. CNN cites no cases that stand for that proposition.

For example, CNN cites *Hilton v. Hallmark Cards* and the Ninth Circuit's observation that

California lower courts disregard the first prong and the California Supreme Court has not defined the statute's limits. *See* 599 F.3d at 899, 903-04, 906-11. That comment was made in the context of the Ninth Circuit's focus on whether specific speech – Hallmark's use of a celebrity's photograph and trademarked catchphrase in a birthday card – was speech involving a "public issue." 599 F.3d at 899, 906-11. It does not translate into authority that this court should eliminate the first prong of the statute's two-prong test.

Similarly, the legislative history does not suggest any intent to create an exemption. If the California legislature wanted to exempt media organizations explicitly, it could have. For example, although neither party discusses it, California's anti-SLAPP statute allows media defendants to file anti-SLAPP motions in certain kinds of cases that otherwise are exempt from anti-SLAPP motions (like private attorney general actions and claims based on certain commercial speech activities). *See* Cal. Code Civ. P. § 425.17(d).

Furthermore, an early motion to strike pursuant to the anti-SLAPP statute is much more advantageous to a defendant than a motion to dismiss. For example, the statute makes mandatory the award of attorneys' fees and costs to prevailing defendants. *Id.* at § 425.16(c)(1). Additionally, it requires the court to consider "supporting and opposing affidavits stating the facts upon which the liability or defense is based" at a very early stage in the litigation. *Id.* at § 425.16(b)(2). Those advantages mean that a court should consider the statute's plain language and goals carefully, particularly when – as here – CNN proposes a broad categorical rule that is inconsistent with the statute's explicit command to conduct a two-prong inquiry and the statute's articulated purpose of reducing lawsuits brought primarily to chill free speech rights. And as the examples submitted by Plaintiffs illustrate, it is inconsistent with ordinary concepts of fairness and would shift the burdens in any media case to plaintiffs asserting claims that the legislature never intended to target, including discrimination claims like those raised here.

The court also rejects CNN's argument that Plaintiffs seek to impose a requirement that a cause of action actually chill a defendant's exercise of speech or petition rights. *See* Defendant's Supplemental Brief, ECF No. 40 at 13. Such a requirement would be inconsistent with the California Supreme Court's conclusion that a "chilling effect" requirement would be "too

1 restrictive" and contravene the legislature's intent to protect speech and petition activities broadly.
2 *See City of Cotati*, 29 Cal. 4th at 75-76. But Plaintiffs make no such argument, contending only that
3 the court should consider the anti-SLAPP statute's purpose of preventing lawsuits brought primarily
4 to chill the valid exercise of the constitutional rights of freedom of speech. *See* Plaintiffs'
5 Supplemental Brief, ECF No. 41 at 7-8. Acknowledging the statute's purpose is not the same as
6 proposing that a lawsuit must have a chilling effect.

7 In sum, the court holds that CNN's status as news media organization does not automatically
8 establish that all of its business activities are acts in furtherance of its protected speech rights for the
9 purposes of California's anti-SLAPP statute. The court thus examines the specific conduct at issue.

**B. Whether CNN's Refusal To Provide Captioning is an Act in Furtherance of CNN's Protected Free Speech Rights**

**1. CNN's Arguments**

CNN asserts that its actual speech is "at issue" because its refusal to use close-captioning cannot be divorced from the broadcasts themselves. Defendant's Supplemental Brief, ECF No. 40 at 16 (arguing that case law demonstrates this result). But CNN chiefly relies on the argument that "it is indisputable that Plaintiffs' claims target how CNN publishes online news videos." *Id.* at 18.

In the alternative, CNN argues that closed-captioning technology does not satisfy its editorial standards because it can, "under certain conditions, result in inaccuracies," and the editorial decision not to use the technology is an act in furtherance of free speech. *Id.* at 18-19.

CNN also contends that Plaintiffs' relief would burden CNN by increasing its production costs and putting it at a competitive disadvantage relative to other news providers. *Id.* at 19-20. CNN asserts that the increased costs for closed captioning videos would result in fewer videos being posted. *Id.* at 20.

**2. Plaintiffs' Arguments**

Plaintiffs acknowledge that its claims about CNN's failure to caption would not exist if CNN had not first engaged in protected broadcast speech, but they assert that CNN's refusal to caption does not meet the first prong of the anti-SLAPP statute because it does not further CNN's free speech rights. Plaintiffs' Supplemental Brief, ECF No. 41 at 11. Plaintiffs argue that CNN wrongly

1  focuses on the identity of the defendant and the background context of the conduct. *Id.* at 12.

2  Plaintiffs assert that the correct focus is the specific conduct targeted by their lawsuit. *Id.*
3  Plaintiffs contend that CNN mischaracterizes this approach as the flawed application of the anti-
4  SLAPP statute by federal courts. *Id.*   In a similar vein, Plaintiffs note that CNN's argument – that
5  the first prong is satisfied whenever the targeted conduct is related in some way to protected
6  activities – is contrary to the California Supreme Court's holding in *City of Cotati*. *Id.* at 14.
7  Plaintiffs point out that in half the cases that CNN cites, the courts are examining whether the speech
8  involves matters of public interest. *Id.* at 14-15.  In the other cases, the lawsuits targeted conduct
9  that furthered the protected speech or petition rights. *Id.* at 15.

10  Plaintiffs also observe that California courts have concluded that discriminatory conduct is not
11  "in furtherance" of an entity's rights of petition or free speech. *Id.* at 13-14 (collecting cases).
12  Plaintiffs further note that claims targeting an attorney's alleged negligence – even if it occurs
13  during the protected activity of filing a pleading – does not target conduct in furtherance of that
14  protected activity. *Id.* (collecting cases).

15  In addition, Plaintiffs distinguish this case from the cases that CNN cites because Plaintiffs are
16  not suing because CNN used or failed to use particular language or images in its news videos. *Id.*
17  Instead, Plaintiffs' suit is about CNN's refusal to provide closed captioning for its online video clips
18  or original CNN material (as it does in its television broadcasts). *Id.* at 15.  Plaintiffs point out that
19  unlike the targeted conduct in the cases CNN cites, closed captioning is not part of the investigation,
20  creation, or even publication of a news story. *Id.* at 15-16 (pointing out that it can occur after
21  publication and be added after the video is already online).

22  Plaintiffs also point out that they do not demand any particular technology for providing closed
23  captioning but only ask CNN to ensure that the benefits and advantages offered by CNN.com are
24  "fully and equally enjoyable to persons who are deaf or have hearing loss." *Id.* at 16 (quoting
25  Complaint, ECF No. 1, at ¶ 65).  Plaintiffs also argue that they demonstrate that available
26  technology exists that does not affect the timing or quality of online content, and CNN has not
27  articulated how the technology fails to meet its editorial standards (or what those standards are). *Id.*
28  at 16-17.  Plaintiffs conclude that the parties' factual disputes regarding the mechanics and quality of

C 11-03458 LB
ORDER DENYING MOTION TO STRIKE         8

1 closed captioning show that the court should deny CNN's motion to strike. *Id.* at 17.

2 Plaintiffs argue that the FCC's new regulations[4] for online closed captioning for video
3 programming previously broadcast on television with closed captioning confirm that closed
4 captioning does not implicate free speech rights. Plaintiffs reason that this means that CNN's free
5 speech rights are not furthered by its refusal to provide closed captioning. *Id.* Plaintiffs point out
6 that the FCC stated in its report accompanying the new regulations that – as on broadcast television
7 – requiring closed captions on the internet does not implicate the First Amendment. *Id.*

8 **3. Analysis**

9 The fundamental issue is whether CNN's refusal to provide captioning for its online video
10 content is an act in furtherance of CNN's free speech rights. The court finds that it is not for three
11 reasons. First, here, Plaintiffs do not target the specific content of any broadcast speech or any
12 practices related to producing that content. This distinguishes the instant case from those that CNN
13 cites, which either did not examine the first prong or were about (a) whether the speech was in
14 connection with a public issue, (b) conduct that was more clearly speech, or (c) conduct that aided
15 the production of speech. Second, to the extent that CNN argues that its decision to not close
16 caption all videos on its site is about its editorial control or an expression of free speech itself, the
17 court rejects this argument at this stage of the litigation given the factual questions about the
18 technology. Finally, given that there would be no limit to this approach, the court rejects CNN's
19 argument that the potential imposition of costs transforms the captioning into acts in furtherance of
20 speech.

21 *a. Cases*

22 Many anti-SLAPP cases involving media defendants do not address whether a plaintiff's cause

---

[4] The regulations require closed captioning of "full-length video programming delivered using Internet protocol" that is published or exhibited on television in the United States with captions after the passage of the regulations. *See* Exh. 2, Levine Decl., ECF No. 42-2 at 29-35. At the second hearing, in response to a direct question from the court, CNN refused to specify what was covered by the lawsuit but not encompassed by the regulations. 2/2/2012 Hearing Transcript, ECF No. 44 at 13. Plaintiffs noted its belief that CNN intends to argue that none of its video content is covered by the regulations. *See* ECF No. 44 at 33; *see also* Smith Reply Decl., ECF No. 29-1 at 4 (discussing disputed terms used in the FCC regulations).

of action arises from conduct in furtherance of protected speech rights because the causes of action arise directly from actual speech or other expressive conduct. Often, these cases hinge on whether the speech is in connection with a "public issue" or an "issue of public interest." For example, in *Seelig v. Infinity Broadcasting Corporation*, a former reality-show contestant sued for slander and related claims after the defendants' employees ridiculed her on their radio show when she refused to appear as a guest. 97 Cal. App. 4th 798, 802-05 (Cal. Ct. App. 2002). The *Seelig* court found that the anti-SLAPP statute applied because the speech – the on-air discussion of the plaintiff's appearance on a reality show – was of public interest. *Id.* at 807-08. Similarly, the court in *M.G. v. Time Warner, Inc.* examined whether using a photograph of a Little League team – used by Time Warner to illustrate a magazine story and television program about coaches who sexually molest players – fell within the anti-SLAPP statute. 89 Cal. App. 4th 623, 626 (Cal. Ct. App. 2001). Some team members in the photograph sued for invasion of privacy and infliction of emotional distress, but the court applied the anti-SLAPP statute, holding that publishing and broadcasting on the serious topic of child molestation was protected speech concerning an issue of public interest in a public forum. *Id.* at 629. Likewise, in *Taus v. Loftus*, the California Supreme Court spent little time on the first prong as the lawsuit was for defamation (a cause of action that clearly implicates specific speech) stemming from the investigation of an article, writing and publishing responsive articles, and speaking at professional conferences and meetings regarding the scientific controversy over "recovered memories," an issue of public interest. *See* 40 Cal. 4th 683, 713 (Cal. 2007).

Courts also have found that the first prong of the anti-SLAPP statute is met when plaintiffs challenge defendants' speech or expressive conduct, even when the case is framed differently. For example, in *Ingels v. Westwood One Broadcasting Services., Inc.*, a comedian called a call-in talk radio show geared to young singles but was screened out because of his age. *See* 129 Cal. App. 4th 1050, 1055 (Cal. Ct. App. 2005). He brought state claims for age discrimination and unfair business practices, and the court applied prong one of the anti-SLAPP statute, holding the claims arose from the plaintiff's attempt to express himself in an open forum carried over the airwaves of public radio, thereby implicating both the plaintiff's and the defendants' First Amendment rights. *Id.* at 1064. In *Stewart v. Rolling Stone LLC*, band members alleged that the magazine unauthorizedly used their

band names in an editorial feature that appeared next to a cigarette advertisement, thereby suggesting that they endorsed the product. *See* 181 Cal. App. 4th 664, 674 (Cal. Ct. App. 2010). The court applied the first prong of the anti-SLAPP statute, holding that the specific acts at issue were the "acts of designing and publishing, within the advertising gatefold layout, an editorial feature containing [the] plaintiffs' band names." *Id.* at 679. In *Olson v. Cohen*, comedian Sasha Baron Cohen, disguised as one of his stock characters, called out bingo numbers at the plaintiffs' charity bingo game in a provocative and allegedly offensive way to capture reactions for a movie. *See* 2011 WL 4014478, No. B221956, at *1 (Cal. Ct. App. Sept. 12, 2011). The plaintiffs sued Cohen for negligence, misrepresentation, and other torts, and the court applied prong one of the anti-SLAPP statute, in part because the conduct intrinsically facilitated the production of the movie and in part because the claims were caused by the free speech conduct: Cohen's words and the filming itself. *See id.,* at *9-*11. (The court also held that the speech was a public issue, defined as "any issue in which the public is interested" (including celebrity gossip). *See id.*, at *10-*11.)

The cases discussed above all involve claims that arose from the defendants' actual speech or expressive conduct. *Selig* was about how radio personalities ridiculed the plaintiff on-air. In *M.G.*, the plaintiffs were concerned about the publication of a photograph and article. In *Stewart*, the plaintiffs were concerned about the inclusion of their band names in an article that was juxtaposed with a cigarette advertisement. *Taus* was about a series of articles and presentations. Sasha Baron Cohen was speaking and filming a movie. Thus, the potential remedies necessarily involved interference with the speech's content or editorial discretion about the content.

In this case, Plaintiffs' cause of action would not exist if CNN did not engage in its broadcast speech. But it is not enough under the anti-SLAPP statute that a cause of action "arguably may have been triggered by protected activity." *See City of Cotati*, 29 Cal. 4th at 78. As the California Supreme Court instructs, under the statute the court looks not at the form of the plaintiffs' cause of action but instead at "the defendant's activity that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." *Navellier*, 29 Cal.4th at 92; *see All One God Faith, Inc. v. Organic and Sustainable Industry Standards, Inc.*, 183 Cal. App. 4th 1186, 1200 (Cal. Ct. App. 2010).

In contrast to these challenges to speech or editorial discretion about speech, Plaintiffs here do not assert a right to change CNN's broadcast or expressive content or otherwise interfere with CNN's editorial discretion. They ask only for access to the video content – without differentiating between news of public interest, commercial speech, or other forms of spoken content – that is posted on CNN.com. *Cf. Motion Picture Ass'n of America, Inc. v. F.C.C.*, 309 F.3d 796, 803 (D.C. Cir. 2002) (describing closed captioning as straight translation of dialogue into text).

The final group of anti-SLAPP cases more robustly analyzes when a media defendant's acts are "in furtherance" of its free speech rights but those cases all involve the media organization's pre-publication investigation or news-gathering conduct and therefore are distinguishable.

These cases establish that California courts protect acts – even illegal or offensive actions – that are geared toward producing speech (so long as the speech involves a public issue or is in the public interest). For example, in the *Olson v. Cohen* case discussed above, the court held that Cohen's conduct at the bingo game intrinsically facilitated the production of his movie. *See* 2011 WL 4014478, at *8. In *Hall v. Time Warner, Inc.*, a California appellate court held that a news crew's conduct was "in furtherance of" the First Amendment where the crew allegedly barged into a private citizen's nursing home room to interview her after she was named a beneficiary of actor Marlon Brando's will. *See* 153 Cal. App. 4th 1337, 1347 (Cal. Ct. App. 2007). In another case, reporters posed as patients and secretly videotaped a doctor illegally prescribing drugs. Even though illegal, those recordings were "in furtherance of" the right of free speech because they were news-gathering activities used in a broadcasted investigative report. *See Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156, 166 (Cal. Ct. App. 2003). Similarly, in *Dieu v. McGraw*, the media defendants allegedly made misrepresentations regarding living conditions to convince emotionally-vulnerable persons to participate in the *Dr. Phil* television show, where they would live in a house together and receive therapy. Those misrepresentations assisted in the creation of the program and thus were protected by the anti-SLAPP statute. *See* No. B223117, 2011 WL 38031, at *4-*6 (Cal. Ct. App. Jan. 6, 2011) (unpublished opinion).

The approach in these cases makes sense. Without news-gathering conduct geared toward publication, a media organization has no content. And even illegal news-gathering activity is

"conduct . . . in furtherance" of the published speech. But that is not the scenario here. CNN has already gathered and decided to broadcast the news.

CNN's proposed application of the anti-SLAPP statute to its conduct here would result in a rule without limits. In the unpublished decision in *Dieu v. McGraw*, the California Court of Appeals recognized that its broad rule – protecting the Dr. Phil show's news-gathering as conduct in furtherance of speech – "could theoretically apply to *virtually all* alleged actionable conduct in connection with the production of any form of media." 2011 WL 38031, at *6 (emphasis added) (declining to "specify the outer limits of the application of the principle of furtherance of free speech"). But the *McGraw* case at least involved conduct that was intrinsically related to creating speech. By contrast, CNN proposes an application of the anti-SLAPP statute that extends beyond conduct in furtherance of creating speech to cover virtually any conduct of a news media organization.

In *Doe v. Gangland Productions, Inc.*, a federal district court addressed this concern and concluded that the anti-SLAPP statute did not apply when a television producer allegedly promised a gang member that it would conceal his identity but nonetheless broadcast his face and gang nickname in televised clips on a show called *Gangland*. 802 F.Supp.2d 1116, 1121-22 (C.D. Cal. 2011). The court rejected the producer's argument that the statute applied just because the plaintiff's claims were related to the defendants' broadcast television show about gang violence. *Id.*. The court observed that under the anti-SLAPP statute, the critical inquiry is whether the cause of action is "*based on* the defendant's free speech or petitioning activity." *Id.* at 1121 (emphasis in the original). The court then held that the alleged breach of the promise not to disclose Plaintiff's identity was not related to news-gathering, and instead, the protected broadcast activities merely lurked in the background. *Id.* at 1122.

The court observed that a contrary result would be a rule without limits, would violate the purpose of the statute, and would open the courts to a flood of anti-SLAPP litigation. *Id.* While recognizing that Plaintiffs' intent was not part of the analysis, the court noted that the anti-SLAPP statute "'provide[s] a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights.'" *Id.* (quoting *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1055-56 (Cal.

2006)). It also observed the "hallmark" of SLAPP suits is that they lack merit and are brought to obtain an economic advantage over a citizen party by increasing litigation costs to weaken the citizen party's case, force him to abandon it, and deter future litigation. *Id.* (citations and quotation omitted). The court reasoned that adopting the defendants's position would mean that the anti-SLAPP statute would apply to every suit for copyright infringement or breach of contract involving a film or television show, a result "surely not intended" by the California legislature, which intended to limit anti-SLAPP motions to claims with the requisite relationship to protected activity. *Id.* at 1123; *see also Duncan v. Cohen*, No. C 08-2243 BZ, 2008 WL 2891065, at *3 (N.D. Cal. July 22, 2008).

The court finds the reasoning of *Gangland Productions* persuasive and – applied to the facts here – it reinforces the court's conclusion that CNN failed to demonstrate that Plaintiffs' claims arose from CNN's conduct in furtherance of its broadcast speech.[5] As discussed above, CNN's publishing of online news videos generally is protected activity, but that activity only "lurks in the background" of Plaintiffs' claims, *see Gangland Productions*, 802 F.Supp.2d at 1122, and does not implicate either the refusal to close caption or the claim for relief.

CNN's proposed application of the anti-SLAPP statute does not consider the statute's preamble, which emphasizes the need to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights and avoid the use of the judicial process to chill participation in matters of public significance. *See* Cal. Civ. Code § 425.16(a); *Gangland Productions,* 802 F.Supp.2d at 1122; *Rusheen*, 37 Cal. 4th at 1055-56. As the *Gangland Productions* court pointed out, to that end, the California legislature limited anti-SLAPP motions to claims with the requisite relationship to protected activity. *See* 802 F.Supp.2d at 1121. Applying the statute here to claims without that relationship to protected activity extends the scope of the statute to claims that the legislature did not intend to cover, including discrimination claims like the

---

[5] CNN argued at the hearing that the federal courts got it wrong in *Gangland Productions* and that any conduct tied to a media defendant's speech necessarily implicates the anti-SLAPP statute. The court agrees that facts in *Gangland Productions*, which involved the publication of the plaintiff's identity, are more closely related to the contents of broadcast speech than the closed captions at issue here.

C 11-03458 LB
ORDER DENYING MOTION TO STRIKE               14

1  ones here.

2  Indeed, California courts often do not apply the anti-SLAPP cases to discrimination claims,
3  holding that the discriminatory conduct is not an act "in furtherance of" an entity's rights of petition
4  or free speech. In *DFEH v. 1105 Alta Loma Road Apartments, LLC*, 154 Cal. App. 4th 1273, 1288
5  (Cal. Ct. App. 2007), a California intermediate court found against a defendant landlord on the first
6  prong in a tenant's disability discrimination suit, holding that the suit rose from the landlord's failure
7  to provide an accommodation and not from the landlord's filing an eviction proceeding. Another
8  intermediate court also found against a defendant employer, holding that the lawsuit arose from the
9  employer's racial and retaliatory discrimination against the plaintiff-employee and not from the
10 protected performance evaluations of the employee. *See Martin v. Inland Empire Util. Agency*, 198
11 Cal. App. 4th 611, 624-25 (Cal. Ct. App. 2011)

12 Cases involving challenges to an attorney's malpractice also are instructive. A claim targeting
13 an attorney's alleged negligence—even if it occurs during the protected activity of filing a
14 pleading— does not target conduct in furtherance of that protected activity but instead targets the
15 attorney's incompetence in delivering that protected activity. *See Kolar v. Donahue, McIntosh &*
16 *Hammerton*, 145 Cal. App. 4th 1532, 1539-40 (Cal. Ct. App. 2006); *Hylton v. Frank E. Rogozienski,*
17 *Inc.*, 177 Cal. App. 4th 1264, 1272 (Cal. Ct. App. 2009)). Again, it is not enough that a cause of
18 action may be triggered by protected activity or that protected activity lurks in the background. *See*
19 *City of Cotati*, 29 Cal. 4th at 78. Instead, the issue is whether the defendant's conduct that gave rise
20 to liability constitutes protected speech or petitioning. *See Navellier*, 29 Cal. 4th at 92.

21 *b. Closed Captioning As Editorial Control*

22 CNN also contends that it has decided to not use imperfect closed-captioning technology that
23 results in inaccuracies "under certain circumstances." CNN asserts that the alleged inaccuracies
24 mean that captioning does not satisfy CNN's editorial standards, and its decision to not use the
25 captioning thus is an act in furtherance of its First Amendment right not to carry content with errors
26 in it. Defendant's Supplemental Brief, ECF No. 40 at 18-19. The court rejects that contention.

27 To support its argument, CNN cites *Kronemyer v. Internet Movie Data Base, Inc.*, where the
28 plaintiff sued IMDB to include him as a producer in the credits that IMDB lists on its website

1 listings of movie credits. *Id.* at 18 (citing 150 Cal. App. 4th 941 (Cal. Ct. App. 2007). CNN asserts that the case defined IMDB's protected speech as the right to list the credits consistent with those listed in the movies themselves, and thus, by extension, protected the right to not to carry content with errors in it. *Id.* at 19.

In *Kronemyer*, the court identified the issue as the content of the website, not IMDB's response to the plaintiff's complaint that he should be listed in the credits. 150 Cal. App. 4th at 947. That holding would apply equally if the plaintiff had demanded that IMDB include additional accurate information. Thus, the accuracy of the information was not dispositive. By contrast, Plaintiffs here make no attempt to exert control over the content that CNN has already chosen to include on its website. Instead, Plaintiffs ask only for closed captioning that merely transcribes the audio content of the videos, providing a delivery mechanism that can be accessed by Plaintiffs. Plaintiffs' Supplemental Brief, ECF No. 41 at 19 at n.7.

To the extent that CNN asserts that its free speech rights are furthered or otherwise implicated by its decision not to provide closed-caption text due to the possibility of errors, the parties present conflicting evidence about the possibility of errors.

Clyde Smith, CNN's Senior Vice President of Global Broadcast Technology and Standards for Turner Broadcasting, argues that the current closed-captioning technology for internet videos is not built around a consistent standard that maintains the signal integrity and the faithful and unimpaired reproduction of both current and legacy captions. Smith Decl., ECF No. 13-1 at 14-15, ¶¶ 14-15. Smith explains that the entire meaning of content can be distorted and/or mis-represented because, for example, some proprietary systems do not support the so-called "roll-up" of captions, and as a result, entire sentences of content or key phrases can be inadvertently omitted. *Id.* at 15, ¶ 15. Smith also asserts that the lack of standardization may result in the captions losing functionality or integrity in translation across platforms or formats and thereby distort the accuracy of the content. *Id.* at 15, ¶ 17. Smith also explains the financial burdens, which presumably would apply any time a media defendant is required to undertake additional efforts to do anything. *Id.* at 17-18, ¶¶ 23-24.

On the other hand, Kevin Erler, a co-founder of Automatic Sync Technologies, LLC, an online captioning company, contends that CNN uses only the Flash technology for its online videos, and

1 this technology is already widely deployed, can be installed through a simple download process, and
2 – by its nature – already restricts the viewing of CNN's online videos to individuals with access to
3 the Flash media player software. Erler Decl., ECF No. 25 at 3-4, ¶¶ 7-8. More directly, Erler
4 challenges Smith's conclusions regarding the technical issues surrounding closed captioning of
5 online videos, arguing that technology exists that would allow for closed captioning that is as good
6 or better than that presented in broadcast television. *Id.* at 6, ¶¶ 16-18.

7 Thus, Plaintiffs have submitted evidence that contradicts CNN's evidence, and the court cannot
8 say on the written record that CNN's evidence defeats Plaintiffs' evidence as a matter of law. *See*
9 *Flatley*, 39 Cal. 4th at 326 (in anti-SLAPP case, court must "accept as true the evidence favorable to
10 the plaintiff . . . and evaluate the defendant's evidence only to determine if it has defeated that
11 submitted by the plaintiff as a matter of law").

12 Moreover, Plaintiffs do not seek to impose a specific technological closed-captioning regime on
13 CNN. Also, the court's determination about whether CNN's conduct is an act in furtherance of
14 speech does not depend on Plaintiffs' requested relief (though it may be probative) but instead
15 focuses on CNN's underlying activity that gives rise to its asserted liability and whether that activity
16 is protected speech. *See City of Cotati*, 29 Cal. 4th at 78; *Navellier*, 29 Cal. 4th at 92. Finally, CNN
17 provided no evidence of what its editorial standards are regarding transcription errors.

18 At the second hearing, the court asked CNN to discuss this last issue. CNN merely referred to its
19 allegedly uncontested affidavit that conclusorily asserted that there would be errors and that such
20 errors would violate CNN's editorial standards. When asked about why the closed-captioning
21 technology and any unavoidable transcription errors are acceptable in the context of television
22 broadcasts, CNN provided no direct answer. Instead, CNN argued that the D.C. Circuit's conclusion
23 that closed captioning does not impact media organizations' First Amendment rights was inapposite
24 because the closed-captioning requirements are uniformly applied across the industry.

25 This argument does not address the *accuracy* of the transcriptions, which appears to be CNN's
26 touchstone issue. The court could infer that CNN meant to convey that the uniform or industry-wide
27 nature of television closed captioning brings any risk of errors in line with CNN's editorial policy
28 because it reduces the chances of CNN being an outlier. But CNN did not make this argument, and

C 11-03458 LB
ORDER DENYING MOTION TO STRIKE         17

the court would not find it dispositive in any event. In addition, as discussed at the initial hearing, the court agrees with the D.C. Circuit that closed captioning is mechanical transcription that does not implicate content and the First Amendment. *See Motion Picture Ass'n of America,* 309 F.3d at 803.

*c. Increased Costs*

CNN also argues that Plaintiffs' lawsuit singles out CNN, increases its production costs, and puts it at a competitive disadvantage relative to other news providers. *Id.* at 19-20. These costs would result in fewer videos being posted. *Id.* at 20.

Just as the court rejected CNN's argument that all of its business activities are "in furtherance" of its protected speech, the court rejects CNN's increased cost argument. Following CNN's argument to its logical conclusion, any legal requirement that came with a financial cost could not be applied to a news media corporation. This is not the law.

Moreover, CNN's argument that it would be unfairly singled out *if* the court were to hold it liable[6] simply does not hold water. A court acting as a neutral arbiter and deciding the issue before it is very different than a state actor affirmatively singling out and inhibiting a particular entity's exercise of its free speech rights. The former has a limited and potentially differential effect on the defendant because of the nature of our judicial system. The latter suggests a discriminatory intent to chill.

### IV. CONCLUSION

In sum, the court holds that CNN did not make a prima facie showing that its refusal to provide captioning on CNN.com is "conduct . . . in furtherance of" its broadcast activities. *See* Cal. Code Civ. P. § 425.16(e)(4). The court thus declines to address whether Plaintiffs demonstrated a probability of prevailing on their claims. *See Tuszynska v. Cunningham*, 199 Cal. App. 4th 257, 266 (Cal. Ct. App. 2011) (if defendant does not meet its burden on step one, the court should deny the motion and need not address step two). There are difficult issues of first impression in this case, but

---

[6] It is important to note that the only issue determined by this order is whether CNN's refusal to close caption its online videos is an act in furtherance of its free speech rights, not whether CNN is ultimately liable for the alleged violations.

1. they are issues for summary judgment. *See Gangland Productions*, 802 F.Supp.2d at 1123. CNN's motion to strike is **DENIED**.

This disposes of ECF No. 13.

**IT IS SO ORDERED.**

Dated: March 23, 2012

_____
LAUREL BEELER
United States Magistrate Judge